## CHAPLINSKY v. NEW HAMPSHIRE.

No. 255.   Argued February 5, 1942.—Decided March 9, 1942.

*Mr. Hayden C. Covington,* with whom *Mr. Joseph F. Rutherford* was on the brief, for appellant.   *Mr. Alfred A. Albert* entered an appearance.

*Mr. Frank R. Kenison,* Attorney General of New Hampshire, with whom *Mr. John F. Beamis, Jr.* was on the brief, for appellee.

Mr. Justice Murphy delivered the opinion of the Court.

Appellant, a member of the sect known as Jehovah's Witnesses, was convicted in the municipal court of Rochester, New Hampshire, for violation of Chapter 378, § 2, of the Public Laws of New Hampshire:

"No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation."

The complaint charged that appellant, "with force and arms, in a certain public place in said city of Rochester, to wit, on the public sidewalk on the easterly side of Wakefield Street, near unto the entrance of the City Hall, did unlawfully repeat, the words following, addressed to the complainant, that is to say, 'You are a God damned racketeer' and 'a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists,' the same being offensive, derisive and annoying words and names."

Upon appeal there was a trial *de novo* of appellant before a jury in the Superior Court. He was found guilty and the judgment of conviction was affirmed by the Supreme Court of the State. 91 N. H. 310, 18 A. 2d 754.

By motions and exceptions, appellant raised the questions that the statute was invalid under the Fourteenth Amendment of the Constitution of the United States, in that it placed an unreasonable restraint on freedom of speech, freedom of the press, and freedom of worship, and because it was vague and indefinite. These contentions were overruled and the case comes here on appeal.

There is no substantial dispute over the facts. Chaplinsky was distributing the literature of his sect on the streets

of Rochester on a busy Saturday afternoon. Members of the local citizenry complained to the City Marshal, Bowering, that Chaplinsky was denouncing all religion as a "racket." Bowering told them that Chaplinsky was lawfully engaged, and then warned Chaplinsky that the crowd was getting restless. Some time later, a disturbance occurred and the traffic officer on duty at the busy intersection started with Chaplinsky for the police station, but did not inform him that he was under arrest or that he was going to be arrested. On the way, they encountered Marshal Bowering, who had been advised that a riot was under way and was therefore hurrying to the scene. Bowering repeated his earlier warning to Chaplinsky, who then addressed to Bowering the words set forth in the complaint.

Chaplinsky's version of the affair was slightly different. He testified that, when he met Bowering, he asked him to arrest the ones responsible for the disturbance. In reply, Bowering cursed him and told him to come along. Appellant admitted that he said the words charged in the complaint, with the exception of the name of the Deity.

Over appellant's objection the trial court excluded, as immaterial, testimony relating to appellant's mission "to preach the true facts of the Bible," his treatment at the hands of the crowd, and the alleged neglect of duty on the part of the police. This action was approved by the court below, which held that neither provocation nor the truth of the utterance would constitute a defense to the charge.

It is now clear that "Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state

action." *Lovell* v. *Griffin,* 303 U. S. 444, 450.[1] Freedom of worship is similarly sheltered. *Cantwell* v. *Connecticut,* 310 U. S. 296, 303.

Appellant assails the statute as a violation of all three freedoms, speech, press and worship, but only an attack on the basis of free speech is warranted. The spoken, not the written, word is involved. And we cannot conceive that cursing a public officer is the exercise of religion in any sense of the term. But even if the activities of the appellant which preceded the incident could be viewed as religious in character, and therefore entitled to the protection of the Fourteenth Amendment, they would not cloak him with immunity from the legal consequences for concomitant acts committed in violation of a valid criminal statute. We turn, therefore, to an examination of the statute itself.

Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances.[2] There are certain well-defined and narrowly limited classes of speech, the prevention

---

[1] See also *Bridges* v. *California,* 314 U. S. 252; *Cantwell* v. *Connecticut,* 310 U. S. 296, 303; *Thornhill* v. *Alabama,* 310 U. S. 88, 95; *Schneider* v. *State,* 308 U. S. 147, 160; *De Jonge* v. *Oregon,* 299 U. S. 353, 364; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 243; *Near* v. *Minnesota,* 283 U. S. 697, 707; *Stromberg* v. *California,* 283 U. S. 359, 368; *Whitney* v. *California,* 274 U. S. 357, 362, 371, 373; *Gitlow* v. *New York,* 268 U. S. 652, 666.

Appellant here pitches his argument on the due process clause of the Fourteenth Amendment.

[2] *Schenck* v. *United States,* 249 U. S. 47; *Whitney* v. *California,* 274 U. S. 357, 373 (Brandeis, J., concurring); *Stromberg* v. *California,* 283 U. S. 359; *Near* v. *Minnesota,* 283 U. S. 697; *De Jonge* v. *Oregon,* 299 U. S. 353; *Herndon* v. *Lowry,* 301 U. S. 242; *Cantwell* v. *Connecticut,* 310 U. S. 296.

and punishment of which have never been thought to raise any Constitutional problem.[3] These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.[4] It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.[5] "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell* v. *Connecticut*, 310 U. S. 296, 309–310.

The state statute here challenged comes to us authoritatively construed by the highest court of New Hampshire. It has two provisions—the first relates to words or names addressed to another in a public place; the second refers to noises and exclamations. The court said: "The two provisions are distinct. One may stand separately from the other. Assuming, without holding, that the second were unconstitutional, the first could stand if constitutional." We accept that construction of severability and limit our consideration to the first provision of the statute.[6]

---

[3] The protection of the First Amendment, mirrored in the Fourteenth, is not limited to the Blackstonian idea that freedom of the press means only freedom from restraint prior to publication. *Near* v. *Minnesota*, 283 U. S. 697, 714–715.

[4] Chafee, Free Speech in the United States (1941), 149.

[5] Chafee, *op. cit.*, 150.

[6] Since the complaint charged appellant only with violating the first provision of the statute, the problem of *Stromberg* v. *California*, 283 U. S. 359, is not present.

On the authority of its earlier decisions, the state court declared that the statute's purpose was to preserve the public peace, no words being "forbidden except such as have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed."[7] It was further said: "The word 'offensive' is not to be defined in terms of what a particular addressee thinks. . . . The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. . . . The English language has a number of words and expressions which by general consent are 'fighting words' when said without a disarming smile. . . . Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane or obscene revilings. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. . . . The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitutes a breach of the peace by the speaker— including 'classical fighting words', words in current use less 'classical' but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats."

We are unable to say that the limited scope of the statute as thus construed contravenes the Constitutional right of free expression. It is a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace. Cf. *Cantwell* v. *Connecticut,* 310 U. S. 296, 311; *Thornhill* v. *Alabama,*

---

[7] *State* v. *Brown,* 68 N. H. 200, 38 A. 731; *State* v. *McConnell,* 70 N. H. 294, 47 A. 267.

310 U. S. 88, 105. This conclusion necessarily disposes of appellant's contention that the statute is so vague and indefinite as to render a conviction thereunder a violation of due process. A statute punishing verbal acts, carefully drawn so as not unduly to impair liberty of expression, is not too vague for a criminal law. Cf. *Fox* v. *Washington*, 236 U. S. 273, 277.[3]

Nor can we say that the application of the statute to the facts disclosed by the record substantially or unreasonably impinges upon the privilege of free speech. Argument is unnecessary to demonstrate that the appellations "damned racketeer" and "damned Fascist" are epithets likely to provoke the average person to retaliation, and thereby cause a breach of the peace.

The refusal of the state court to admit evidence of provocation and evidence bearing on the truth or falsity of the utterances, is open to no Constitutional objection. Whether the facts sought to be proved by such evidence constitute a defense to the charge, or may be shown in mitigation, are questions for the state court to determine. Our function is fulfilled by a determination that the challenged statute, on its face and as applied, does not contravene the Fourteenth Amendment.

*Affirmed.*

---

[3] We do not have here the problem of *Lanzetta* v. *New Jersey*, 306 U. S. 451. Even if the interpretative gloss placed on the statute by the court below be disregarded, the statute had been previously construed as intended to preserve the public peace by punishing conduct, the direct tendency of which was to provoke the person against whom it was directed to acts of violence. *State* v. *Brown*, 68 N. H. 200, 38 A. 731 (1894).

Appellant need not therefore have been a prophet to understand what the statute condemned. Cf. *Herndon* v. *Lowry*, 301 U. S. 242. See *Nash* v. *United States*, 229 U. S. 373, 377.