DIXIE STULTS v. STATE OF INDIANA.

[No. 2-1273A267. Filed November 6, 1975.]

462

Robert C. Rupp, Stewart, Irwin, Gilliom, Fuller & Meyer, of Indianapolis, for appellant.

Theodore L. Sendak, Attorney General, Gary M. Crist, Deputy Attorney General, for appellee.

WHITE, J.—The appellant Dixie Stults (Stults) and her sister (Couch) were charged in Municipal Court of Marion County with the offense of disorderly conduct.[1] A jury found Stults guilty and Couch not guilty. Stults was sentenced to pay a fine of $15 and costs in the amount of $50. She appealed her conviction to the Criminal Court of Marion County, Division Three, which affirmed, and she has now perfected an appeal to this court. In this appeal she argues that her conviction should be reversed because it was the police officers involved rather than she who initiated the confrontation, and/or because her alleged behavior was directed solely toward the police officers and where only police officers are offended a conviction for disorderly conduct will not lie, and/or that her alleged behavior did not tend to lead to violence. She also assigns as error the court's refusal to give three tendered instructions.

We affirm.

The evidence most favorable to the State shows that on one September evening three off-duty Marion County Deputy Sheriffs were working as security guards in a discount department store. They were in the manager's office, which was above the floor level of the store, and were watching the store and the people through a one-way window. Their at-

---

1. IC 1971, 35-27-2-1, Ind. Ann. Stat. § 10-1510 (Burns 1974 Supp.):
   "Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultuous or offensive behavior, threatening, traducing, quarrelling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct, and upon conviction, shall be fined in any sum not exceeding five hundred dollars [$500] to which may be added imprisonment for not to exceed one hundred eighty [180] days."

tention was attracted to Stults and Couch who, it appeared, were taking numerous items of clothing into the dressing room and bringing a smaller amount out. The deputies observed the sisters for approximately 45 minutes. At that time the sisters left the clothing area with nothing in their hands and headed for the door. The deputies went to stop the sisters to ask about the clothing. The sisters passed the checkout counters and went out of the store through the entrance doors rather than the exit doors. Two of the deputies, Moore and Hall, went outside after them while the third, Jefferson, went to the service desk. Moore and Hall approached the sisters from behind about 10 feet from the door; they had their badges out and held up in front of them. Moore called to the sisters, said he and Hall were police officers and would like to talk to them. Couch turned, looked at them and said "You ain't shit" and resumed walking. The deputies stopped them and asked them to go inside while the deputies checked on the merchandise that they had seen the sisters take into but not out of the dressing room. The sisters, mainly Couch, started arguing, saying that the deputies couldn't stop them because they hadn't done anything, that the deputies couldn't make them go back inside. The sisters' argument became loud and was interspersed with curses. After a few minutes they all did move back inside. Once inside they were by the service desk, which was only a few feet from the door, and the sisters started yelling for the manager, asking who the hell these people were to stop them, and continued arguing and cursing in loud voices. People coming into and going out of the store were stopping to see what was going on. Deputy Hall warned the sisters to "cease with the language and all the noise." They continued to be loud and boisterous. Stults called Moore a "motherfucker" and at that time Hall arrested both Stults and Couch for disorderly conduct. A subsequent search revealed that the sisters had no merchandise in their possession.

Stults' first argument is based on the fact that the entire incident arose after and because the police stopped her and wrongly accused her of shoplifting.[2] She argues that her conduct was provoked by illegal police activity and therefore the charge of disorderly conduct will not lie. In support of that argument she cites *Whited* v. *State* (1971), 256 Ind. 386, 269 N.E.2d 149.

The decision in *Whited* is not authority for Stults' position. The majority opinion did not reach that question but instead held that whether the police involved were acting legally or illegally when they entered upon premises where Whited was a guest (apparently to conduct a search thereon) was irrelevant because Whited commenced his activity without any inquiry into the legal status of the police. The minority opined that in the absence of proof of a valid search warrant, or of grounds for a warrantless search, it must be assumed the police were acting illegally, but that mere illegality is not sufficient to constitute a provocation which will justify acts or words otherwise punishable as disorderly conduct.

"This is not to say that every miscue of a policeman will justify provocative conduct by the person thereby offended or inconvenienced. The tests are whether or not the action which provoked the assault was, under the circumstances, such as would be acceptable of a professionally competent policeman, and whether or not such action, under the circumstances, would incite the anger of a person of ordinary emotional stability. If the answer to the first question is 'No' while the answer to the second is 'Yes', the probable and natural consequences will be held to be the conduct of the policeman. If, however, the answer to the first question is 'Yes' or if the answer to the second question is 'No', the policeman's action will not be held to justify conduct calculated to be, or reasonably likely to be offensive to him or to incite others to be offensive to him." (269 N.E.2d at 155.)

2. There is no offense known as "shoplifting". Instead the behavior that constitutes "shoplifting" is a violation of the Offenses Against Property Act. See IC 1971, 35-17-5-3(a), Ind. Ann. Stat. § 10-3030(a) (Burns 1974 Supp.). In this opinion we shall, for convenience, refer to the suspected behavior as shoplifting.

Moreover, Stults' argument appears to be founded on the theory that since she was not subsequently charged with shoplifting the deputies who stopped her were *per se* acting illegally. ("Appears to be" is the proper description since the brief talks about illegal police activity but does not say what factors rendered the police activity illegal.) No authority is cited, or could be cited, for this novel theory. An arrest made with probable cause is a legal arrest. "Reasonable and probable cause for making an arrest cannot be made to depend upon the establishing of the crime for which the accused is arrested." *DeLong* v. *State* (1929), 201 Ind. 302, 308, 168 N.E. 22. Stults has not contended, much less shown, that the deputies acted without probable cause when they stopped her outside the store.

Stults' second argument is that her actions were directed solely toward the deputies and that "when only police officers are offended, a conviction for disorderly conduct will not lie," citing as authority *Williams* v. *District of Columbia* (D.C. App. 1969), 419 F. 2d 638. We do not read *Williams* as so holding, or even as so implying. Furthermore, that specific argument was rejected in *Whited, supra* (269 N.E.2d at 151):

> "Appellant next asserts that it was the policemen who were disturbed and not the neighborhood. Since, he contends, only policemen testified as to the nature of his conduct there is no showing that persons in the neighborhood were disturbed. Such reasoning overlooks the concept that only a showing that conduct which *by its nature* is offensive in the context in which it is committed is required to support a conviction under the statute. Here the officers testified as to the quality of Whited's actions. The fact that no neighbor gave similar testimony is not fatal. All that is required is a showing that an accused's actions were possessed of loud and offensive characteristics in the setting in which they were done. Such a state of facts can as well be established by one source of testimony as another.

> \* \* \*

> "Also, appellant relies on the fact that policemen are

naturally subjected to certain abuses in their work to support an assertion that appellant's conduct should not be regarded as in violation of § 10-1510. However it is the offensive nature of the conduct in terms of the *neighborhood* that violates the statute. The officers in this case are not the focal point of the conviction. While they related the nature of appellant's acts it was the acts themselves and not those at whom they were directed that form the basis of the conviction."

In the case at bar, unlike *Whited,* the clerk behind the service desk testified as to Stults' behavior and that such behavior offended her.

Stults' third argument is that there is no evidence that her conduct tended to lead to violence, and that, in fact, the evidence shows that her behavior merely aroused the curiosity of the onlookers. She contends that the disorderly conduct statute, IC 1971, 35-27-2-1, has been construed as applying to pure speech only if that speech has a tendency to lead to violence. As authority she cites *Whited* v. *State, supra; Miller* v. *State* (1972), 258 Ind. 79, 279 N.E.2d 222; and *Hess* v. *State* (1973), 260 Ind. 427, 297 N.E.2d 413.[3]

Even if we assume that Stults' interpretation of the above decisions is correct,[4] her argument cannot prevail. No case has held that the failure of the proscribed speech behavior to produce violence is proof that the speech behavior did not have the tendency to lead to violence. *Whited, supra,* implies

---

3. Though not so noted in appellant's brief, the United States Supreme Court held that the evidence did not show Hess' behavior to be within certain constitutionally proscribable categories and reversed his conviction. *Hess* v. *Indiana* (1973), 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303.

4. Others have interpreted those decisions differently. For example, in *Hess* v. *State, supra,* the dissenting opinion describes the majority opinion thus:

"The majority attempts to narrow the statute to prevent problems of vagueness and overbreadth. The statute is limited in the area of pure speech to speech which is so loud as to become a public nuisance, or speech which has a tendency to lead to violence." *(260 Ind. at 439, 297 N.E.2d at 420.)*

that resulting violence, if it occurs, is merely evidence that the speech had the tendency to lead to violence.

Stults' "pure speech" in this instance falls clearly within the category of constitutionally unprotected speech known as "fighting words" as described in *Chaplinsky*[5] v. *New Hampshire* (1942), 315 U.S. 568 at 571, 62 Sup. Ct. 766 at 769, 86 L. Ed. 1031 at 1035:

> "Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' *Cantwell* v. *Connecticut,* 310 U.S. 296, 309-310." (Footnotes omitted.)

The Supreme Court has affirmed the above principle in numerous decisions, including *Hess* v. *Indiana, supra,* (414 U.S. 105) n. 3.

Thus even though Stults' behavior was "pure speech" in that it consisted entirely of spoken words, her behavior was not constitutionally protected. Constitutionally unprotected speech can be treated in the same manner as is behavior having no speech content whatsoever. That is, any person who might "act in a loud, boisterous or disorderly manner so

---

5. The words ascribed to Chaplinsky and addressed to a police officer, were " 'You are a God damned racketeer' and 'a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists.' " (315 U.S. at 569.)

as to disturb the peace and quiet of any neighborhood or family" would violate the disorderly conduct statute whether the particular "act" be constitutionally unprotected speech or a 3:00 A.M. firecracker salvo.

We must note that we do not hold that speech containing vulgarities or obscenities is *per se* constitutionally unprotected. See *Cohen* v. *California* (1971), 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284; *Hess* v. *Indiana* (1973), 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303. Nor do we hold that "fighting words" *per se* constitute a violation of the disorderly conduct statute. Instead, we hold that personal epithets and verbal abuse (which may or may not contain vulgarities or obscenities) do not enjoy constitutional protection, and that engaging in such activity may under certain circumstances constitute disorderly conduct. And finally, that the circumstances here in evidence were sufficient to render Stults' speech disorderly conduct.

Stults also claims error in that the court refused to present to the jury three tendered final instructions.

Appellant's tendered Instruction No. 5 reads:

"I instruct you that it is the law in this State that one who is the victim of an illegal arrest, may protest such arrest or even resist such an arrest by using such force as may reasonably appear to be necessary at the time and under the circumstances then existing. An individual citizen who protests an illegal arrest by maintaining her innocence with the police officer is not guilty of disorderly conduct.

"The authority of the police officer to arrest a citizen without a warrant for a misdemeanor is limited to offenses committed in the presence or view of the arresting police officer."

Without deciding herein whether the victim of an illegal arrest may forcibly resist that arrest (see *Heichelbech* v. *State* [1972], 258 Ind. 334, 281 N.E.2d 102, 104), we hold the instruction was properly refused because, *inter alia:*

1. It embraces two purported principles of law in violation of Trial Rule 51(D), Indiana Rules of Procedure.[6]

2. It is vague, abstract, inconsistent and inapplicable to the evidence. The first paragraph's allusion to an "illegal arrest" apparently refers to the original stopping, a stopping made to investigate a possible shoplifting, yet the second paragraph speaks of an arrest made for a misdemeanor. Shoplifting is not a misdemeanor; it is a felony, as is any violation of IC 1971, 35-17-5-3(a), Ind. Ann. Stat. § 10-3030 (a). See *Hunter* v. *State* (1965), 246 Ind. 494, 207 N.E.2d 207. Conversely, if both paragraphs refer to the arrest for the misdemeanor offense of disorderly conduct, then the first paragraph is inconsistent with the evidence which shows without dispute that Stults' disorderly behavior was in response to the original stopping. "A tendered instruction which the court itself cannot understand and properly relate to law and the evidence of the case ought not to be given." *Heichelbech, supra* (281 N.E.2d 102.)

Appellant's tendered Instruction No. 8 reads:

"You are instructed that where only police officers are offended a conviction of Disorderly Conduct will not lie."

As noted before, this is not an accurate statement of law. It is axiomatic that no error is committed in refusing an instruction which does not correctly state the law. cf. *Indianapolis Transit System* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543.

Appellant's tendered Instruction No. 7 reads:

"I instruct you that in considering the charge of Disorderly Conduct, you may consider only that activity which occurred before the defendant was taken into custody by the police officers."

---

6. TR. 51(D) provides, *inter alia:* "Each tendered instruction shall be confined to one [1] relevant legal principle."

In support of her contention that it was reversible error to refuse this instruction, Appellant argues that there is no evidence (and there is none) that either she or her sister were creating any disturbance "prior to the time the officers took them into custody charging them with alleged shoplifting." Stults again cites *Whited, supra,* as authority. *Whited* clearly states that a conviction for disorderly conduct must be based on the defendant's action prior to the time he or she was arrested for disorderly conduct; it is not authority for the proposition that once a person is taken into custody for any other reason he or she becomes immune to prosecution under the disorderly conduct statute no matter what behavior ensues. It would be ridiculous, for example, to contend that a motorist stopped for speeding can thereupon with impunity persistently sound his horn while hollering at and cursing all who pass by. The above instruction does not correctly state the law and was properly refused. *Indianapolis Transit System, supra.* (148 Ind. App. 649, 269 N.E.2d 543.)

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 336 N.E.2d 669.