Greg **MESAROSH**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 4-683A182.

Court of Appeals of Indiana, Fourth District.

Feb. 9, 1984.

Ray Warren Robison, Bedford, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Greg Mesarosh (Mesarosh) appeals his jury conviction of Disorderly Conduct, a Class B misdemeanor, IND.CODE 35–45–1–3(2).

We affirm.

ISSUE

This appeal presents a single issue for review:

Whether Mesarosh's obscene language directed to police officers was protected under his right to freedom of speech?

FACTS

Mesarosh and a companion were in front of a Mitchell, Indiana, tavern when a town police officer and a dispatcher arrived in a patrol car. After a struggle, they arrested Mesarosh's companion for reasons not disclosed in this record.

Mesarosh went up to the patrol car after his companion was locked inside and loudly protested. Both he and his companion shouted about the arrest.[1] Although the sequence of events is not entirely clear in the record, at some point Mesarosh went into the nearby pool hall, came back out, and resumed shouting at the officers. There was testimony Mesarosh shouted "[L]ook at this s..t going on right here.... I'll get you mother f....rs, you son-of-a-b...hes.... F..k you pigs. All you ever want to do is pick on us.... We're going to get your a.., I'm going to see you in court." A crowd gathered in front of the pool hall, and other persons came out of businesses to watch the incident. Some other persons in the crowd may have been shouting at the officers, but no one attempted to interfere with the arrest.

There was testimony previous incidents involving threats to police officers had occurred at the pool hall, although no specific incidents were related. Mesarosh was arrested a short time after the incident.

DISCUSSION AND DECISION

A. Unprotected Speech

Mesarosh was convicted of making unreasonable noise and continuing to do so after being asked to stop.[2] Thus, Mesarosh's conviction stemmed from his vulgar speech. The First Amendment to the United States Constitution provides in pertinent part,

Congress shall make no law abridging the freedom of speech.

Freedom of speech is one of the fundamental liberties protected from impairment by the States. *Gitlow v. New York,* (1925) 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138. Similar protection is provided by Art. I, § 9 of our State Constitution.

Despite the sweeping language of the First Amendment, the United States Supreme Court has held several categories of "speech" fall outside the ambit of its protection. These categories include: (a) obscenity, *see generally Miller v. California,* (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; (b) speech in circumstances where its time, place or manner of delivery unduly interferes with privacy of the home or a similar competing interest, sometimes called "nuisance" speech, *see e.g. Kovacs v. Cooper,* (1949) 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 and *see generally* Nowak, Rotunda, Young, *Handbook on Constitutional Law* 812–17 (1978); (c) speech advocating immediate violence or similar lawless action which is likely to follow, *see generally Hess v. Indiana,* (1973) 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303; *Brandenburg v. Ohio,* (1969) 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430; and (d) "fighting words," personally abusive language likely to provoke a violent reaction by listeners toward the speaker, *see generally Chaplinsky v. New*

---

1. Mesarosh also was charged with Assisting a Criminal, IND.CODE 35–44–3–2, but was acquitted.

2. The constitutionality of IC 35–45–1–3(2) is not challenged in this appeal.

*Hampshire,* (1942) 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, discussed *infra.*[3]

■ This court will affirm a conviction on any basis fairly presented by the record. *Cain v. State,* (1973) 261 Ind. 41, 46, 300 N.E.2d 89, 92. We affirm this conviction by applying the "fighting words" doctrine.

### B. "Fighting Words" Doctrine Applied

In *Chaplinsky, supra,* the defendant was convicted under a statute analogous to the provision invoked in this case. He had called a town marshall a "God damned racketeer" and "a damned Fascist". He had also called the government of Rochester fascists or agents of fascists. *Id.,* 315 U.S. at 569–70, 62 S.Ct. at 768. The Supreme Court upheld the conviction, stating:

> Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words— those words which by their very utterance inflict injury or tend to incite a breach of the peace.... [S]uch utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Id.,* 315 U.S. at 571–72, 62 S.Ct. at 769. Mesarosh's speech fell within the ambit of *Chaplinsky* and its progeny.

■ Although *Chaplinsky* stated the "fighting words" doctrine in broad terms, subsequent cases have given the doctrine a limited construction. The current scope of the "fighting words" exception was summarized by the Supreme Judicial Court of Massachusetts in *Commonwealth v. A Juvenile,* (1975) 368 Mass. 580, 591, 334 N.E.2d 617, 624–25.

> Fighting words as referred to in the relevant constitutional decisions are limited to "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire,* (1942) 315 U.S. at 572, 62 S.Ct. at 769. The words must be "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California,* (1971) 403 U.S. 15, 20, 91 S.Ct. 1780, 1785 [29 L.Ed.2d 284].... In order to be personally abusive the words must be "directed to the person of the hearer" in the sense that they are a face to face personal insult. *Cantwell v. Connecticut,* (1940) 310 U.S. 296, 309, 60 S.Ct. 900, 906 [84 L.Ed. 1213].... Finally, the determination of whether words are personally abusive may not rest on subjective perceptions since "an undifferentiated fear or apprehension is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Independent Community School Dist.,* (1969) 393 U.S. 503, 508, 89 S.Ct. 733, 737 [21 L.Ed.2d 731]....

Thus the thrust of the doctrine has become whether, under an objective standard, the words were stated as a personal insult to the hearer in language inherently likely to provoke a violent reaction. Under these facts we find the words used of sufficient intensity they tended to provoke such reaction.

Our supreme court and this court have examined the "fighting words" doctrine in several cases involving confrontations with police officers. In *Whited v. State,* (1971) 256 Ind. 386, 269 N.E.2d 149, police officers

---

3. Our categorization is somewhat artificial in that previous decisions have analyzed the "imminent lawless action" and "fighting words" exceptions as somewhat overlapping concepts depending on the facts presented. *See, e.g., City of*

*Petersburg v. Waller,* (1972) Fla., 261 So.2d 151; *see also Whited v. State,* (1971) 256 Ind. 386, 269 N.E.2d 149. This case presents a similar situation.

were greeted by a series of personal epithets when they approached a house. A crowd gathered, and several persons were arrested during the incident. The court upheld a disorderly conduct conviction over a vigorous dissent, finding the defendant's speech had a tendency to lead to violence toward the officers. The court did not rely specifically on an established line of constitutional cases, but the opinion's rationale seems more consonant with *Brandenburg* rather than the *Chaplinski* "fighting words" doctrine.[4]

The court subsequently reversed a disorderly conduct conviction in *Miller v. State*, (1972) 258 Ind. 79, 279 N.E.2d 222. There, a justice of the peace convicted Miller's friend of a traffic violation. Miller then turned to one of the prosecuting witnesses, a State Trooper, and said "[t]his is nothing but a damn farce.... It's nothing but a goddamn kangaroo court.... Hell, I'm not apologizing to anybody." *Id.*, 258 Ind. at 81, 279 N.E.2d at 223–23. Our supreme court found no evidence the court proceedings had been disrupted by the brief outburst, the remarks had not been addressed to the officers individually, and even had the remarks been directed to them they were not of the kind which would lead reasonable men to believe violence or disorder might tend to result. *Id.*, 258 Ind. at 83, 279 N.E.2d at 224.

This court previously has addressed similar issues in *Cavazos v. State*, (1983) Ind. App., 455 N.E.2d 618, and *Stults v. State*, (1975) 166 Ind.App. 461, 336 N.E.2d 669. In *Stults* the defendant and her sister were suspected of shoplifting and detained by off-duty sheriffs deputies working at the store. The defendant argued loudly with the officers, and called one deputy a "motherf...er". This court upheld her disorderly conduct conviction, stating

> We must note that we do not hold that speech containing vulgarities or obscenities is *per se* constitutionally unprotected. [Citations omitted.] ... Instead, we hold that personal epithets and verbal abuse (which may or may not contain vulgarities or obscenities) do not enjoy constitutional protection, and that engaging in such activity may under certain circumstances constitute disorderly conduct.

*Id.*, 166 Ind.App. at 469, 336 N.E.2d at 674.

In *Cavazos* the defendant's brother was arrested at a tavern. Cavazos protested, telling the officer he had a grudge against her brother. She called the officer an "asshole." The record indicated other persons in the bar attempted to interfere with the arrest. Cavazos was convicted of violating the statute invoked in this case, but this court reversed with one judge dissenting.

The majority determined such speech could not be punished as obscenity or "nuisance" speech. *Id.*, 455 N.E.2d at 620–21. The opinion also determined the record was insufficient to support a finding Cavazos's words could incite imminent lawless action under *Brandenburg, supra,* and *Hess, supra.* The opinion also examined the "fighting words" doctrine and held the term "asshole," "while indeed derogatory ... does not describe, reference, or characterize national origin, race, religion, sex, or parentage, categories into which fighting words now commonly fall," *id.*, 455 N.E.2d at 620. The court thus concluded "asshole" was not a "fighting word." Chief Judge Buchanan dissented, arguing among other things the defendant's language " 'plainly' was profane, 'plainly' ... was insulting, and 'plainly' ... was fighting." *Id.*, 455 N.E.2d at 623, n. 3 (Buchanan, C.J., dissenting), *quoting Lewis v. New Orleans*, (1974) 415 U.S. 130, 141, 94 S.Ct. 970, 976, 39 L.Ed.2d 214 (Blackmun, J., dissenting).

Although *Cavazos's* categorization of "fighting words" is instructive, we do not consider it exclusive, and apply the dissent's rationale in this case. We consider the term, "motherf...er", the epithet at issue in *Stults* and here, a "fighting word" when directed toward policemen, in this case. We are aware police officers must expect complaints and even limited verbal abuse during the course of their duties.

4. See note 3, *supra*.

Justice Powell has suggested a properly trained police officer may reasonably be expected to exercise a higher degree of restraint than the average citizen when confronted with "fighting words." *Lewis v. City of New Orleans,* (1972) 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (Powell, J., concurring in result), and following remand *id.,* (1974) 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (Powell, J., concurring in result). Judge Robertson has expressed similar views. *See Evans v. State,* (1982) Ind.App., 434 N.E.2d 940, 943. *See also Hammond v. Adkisson,* (8th Cir.1976) 536 F.2d 237, 239–40. However, verbal abuse " 'far beyond what any other citizen might *reasonably* be expected to endure' need not be endured by the police." *State v. John W.,* (1980) Me., 418 A.2d 1097, 1107 (footnote omitted and emphasis supplied). Mindful of our duty to enforce constitutional rights, we conclude the line has been crossed in this case.

Our decision is premised on the facts here presented, particularly the language used by Mesarosh. It should not be read to question *Miller* or *Cavazos,* both decided on their particular facts. Having examined decisions from other jurisdictions, it is apparent differing results are reached because of differing facts, *compare, Morris v. State,* (1976) Fla., 335 So.2d 1; *White v. State,* (1976) Fla. 330 So.2d 3; *Harbin v. State,* (1978) Fla.App., 358 So.2d 856; *State v. John W., supra* (reversing convictions), *with Meyers v. State,* (1972) 253 Ark. 38, 484 S.W.2d 334; *City of St. Paul v. Morris,* (1960) 258 Minn. 467, 104 N.W.2d 902, *cert. den.* (1961) 365 U.S. 815, 81 S.Ct. 696, 5 L.Ed.2d 693 (upholding convictions).

Judge Robertson wrote "[i]t is a sad commentary of our modern society that law enforcement officers must be subjected to insults such as those used in the present case[,]" *Evans, supra,* 434 N.E.2d at 943, n. 2. This observation applies equally here. This court cannot condone the statements directed to the officers in this case under the rubric of Freedom of Speech for the reasons stated above.

The judgment is affirmed.

MILLER, J., concurs.

YOUNG, J., concurs with opinion.

YOUNG, Judge, concurring.

I concur in affirming because the defendant used unreasonable noise after being asked to stop. The statute proscribing such behavior is, as applied here, a reasonable regulation of the time when, the place where, or the manner in which one may express his views. Therefore, the content of the loud noise is irrelevant. A person could violate the statute by reading the scriptures in an unreasonably loud manner. This is not an obscenity case.