## STATE OF CONNECTICUT *v.* ERNST WEBER
## (2072)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 5, 1985—decision released March 11, 1986

*John R. Williams,* for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, was *James Radda,* former deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing from the judgment of his conviction after a jury trial of the

crimes of breach of the peace in violation of General Statutes § 53a-181, and interfering with a police officer in violation of General Statutes § 53a-167a.[1] The jury could reasonably have found the following facts. On October 7, 1981, Alfred Amendola and David Adams, two part-time New Haven police officers, were on foot patrol, walking their assigned beats. They were in uniform and, in the course of their duty, had ticketed a number of illegally parked cars.

At about 9 p.m., the patrolmen observed an automobile parked on a pedestrian crosswalk near the corner of Chapel and Park Streets. The vehicle was obstructing the crosswalk and the rear of the car jutted out into the traffic lane of Park Street. The car was parked opposite a bar called Ron's Place. Amendola asked the doorman at Ron's Place if he knew who owned the car, but received no reply. Amendola ticketed the car for a parking violation and then continued on patrol with Adams. After the officers had proceeded a short distance up the street, they were approached by Wayne Johnson, who asked them about the parking violation. Along with Johnson, the officers walked back to ascertain which vehicle was the subject of Johnson's inquiry. They established that the defendant's vehicle was involved and explained to Johnson that the car had to be moved. Johnson left the officers and entered Ron's Place.

---

[1] The defendant was tried by a jury on a four count information. The jury returned the following verdicts: guilty on the second count, breach of peace by use of abusive language in violation of General Statutes § 53a-181 (a) (5); guilty on the third count, interfering with an officer in violation of § 53a-167a; and not guilty on the fourth count, assault in the third degree in violation of § 53a-61 (a) (1). At the time of the jury's verdict, the court granted the defendant's motion for acquittal as to count one, breach of peace by use of obscene language in violation of General Statutes § 53a-181 (a) (5). The court subsequently denied the defendant's motion for acquittal as to counts two and three.

The defendant was then inside Ron's Place and had been there since approximately 6:30 p.m. During that time, he had consumed a quantity of beer and blackberry brandy. Earlier that morning, the defendant had appeared in court because of a motor vehicle arrest by Yale University and New Haven police that had occurred the previous week. When the defendant exited the bar, the officers were about twenty feet away, proceeding along Chapel Street. The defendant began to shout at the police officers. Amendola testified that the defendants first words were: "[Y]ou fucking pig. You did it again. You tagged my car. Why did you tag my fucking car?" Amendola recalled that the defendant also yelled: "[Y]ou are a fucking asshole." Adams stated that this initial tirade was punctuated by the epithet "Motherfuckers."

The patrolmen walked back to where the defendant was standing to "see what the problem was." The defendant appeared to be intoxicated; his breath smelled of alcohol, his words were slurred and spittle sprayed from his mouth as he shouted at the officers. The officers tried to explain to the defendant the nature of the parking violation and the proper procedure for challenging the validity of the ticket. The defendant evidently was not satisfied with the explanation given to him. The officers also told the defendant that as long as he was there, he should move the automobile off the crosswalk or it would be towed away. Johnson, who was present, urged the defendant to move his car. The defendant responded by moving his car about five feet, which satisfied the officers that the vehicle was no longer in violation and they started to walk away.

The defendant for a second time began screaming at Amendola and Adams, saying: "You fucking cowards, you pigs. Come back here now." Amendola interpreted this outburst as a challenge, testifying: "He

wanted to fight us." The officer again walked back, and in an obvious attempt to placate the defendant and to cool down the situation stated to him: "I didn't hear what you said. Go back [into Ron's Place]. . . I didn't hear anything." The defendant conceded at the trial that the officers "took great pains to ignore [him]." Johnson, taking the defendant by the arm, drew him back inside the bar.

Again the officers resumed their beat, but had proceeded only about one hundred feet when they heard the sound of running footsteps approaching them from the rear. The officers turned and found that the defendant was only a few feet away, "yelling at the top of his voice," and shouting at the officers: "You fucking pigs, I want you now. . . . I am going to get you. I did it before." The defendant also called the officers "cowards."

By this time, a crowd of about twenty people had gathered to observe the defendant's confrontations with the police. The crowd included both patrons of Ron's Place, who had come out of the bar, and passersby. The crowd had become polarized and vocal. According to Amendola, some were cheering the defendant on, and others were cautioning him to get back inside the bar before he got into trouble.

At this point, Adams decided it had become necessary to arrest the defendant for breach of the peace. Amendola put his arm around the defendant and told him he was under arrest. The defendant knocked Amendola's arm away, exclaiming: "You fucking pig, you are not going to arrest me."

The officers again informed the defendant that he was under arrest. Amendola took the defendant's right arm and placed a handcuff on his wrist, and Adams took the defendant's left arm. The officers placed the defendant against the side of a building in order to conduct

a patdown search for weapons. At this point, the defendant pulled free from Adams and shoved Amendola into the side of the building, injuring the officer's right hand. The defendant kneed Amendola in the groin, causing the officer to fall to the ground still grasping the defendant's arm. The defendant fell over onto the officer and a struggle ensued, during the course of which Amendola called for assistance on his police radio, which the defendant knocked from his hand. With the assistance of Adams and other police officers who had arrived on the scene, the defendant was subdued, placed in a prisoner van and transported to police headquarters.

The defendant claims that the court erred (1) in its refusal to grant his oral motion of recusal, (2) in failing to find that the defendant's conduct was constitutionally protected free speech, (3) in failing to find General Statutes §§ 53a-181 (a) (5) and 53a-167a unconstitutional as vague and overbroad, and (4) in denying the defendant's motion for acquittal as to the charges in counts two and three.

Regarding the defendant's claim of error based on the trial judge's refusal to disqualify himself, we note that the defendant has not followed the procedural requirements necessary for us effectively to review the actions of the trial court. See Practice Book § 997. Our concern here is whether the defendant's failure to follow the procedure required by Practice Book § 997 has precluded our consideration because the record does not contain sufficient information upon which we may base our review. We answer in the affirmative.

In this matter, the defendant claims bias and prejudice on the part of the trial court, *W. Sullivan, J.*, because of remarks attributed to the judge. When the case was reached for trial, there were certain pretrial motions pending in the file, having been heard by

another judge, *Chernauskas, J.,* but not yet acted upon. Judge Sullivan took the file to Judge Chernauskas and left it with him. Some twenty-five minutes later, the file was returned to Judge Sullivan, who noted that Judge Chernauskas had denied the motions. At this point, defense counsel made an oral motion that Judge Sullivan disqualify himself. Defense counsel stated that there was a civil suit pending, brought by the defendant against the New Haven police, and that: "[Y]our Honor's position on this and all cases during your period of [criminal] jury [duty] in this court has been that . . . motions to dismiss should not be granted and nolles should not be entered and [accelerated rehabilitation] should not be approved unless there is some reasonable assurance that the police will not be sued . . . ." Judge Sullivan had allegedly expressed this opinion in chambers some three months prior to the trial. He had previously defended police officers in civil suits prior to his appointment to the bench. Defense counsel also stated that "the policy has been announced both in my presence and privately from time to time." Defense counsel contended that such a "policy" created "an appearance of impropriety, terrible appearance of impropriety," which extended to "Judge Chernauskas, as well, because of [Judge Sullivan's] ruling. . . ."

There was an absolute failure on the part of counsel to conform to the requirements of Practice Book § 997 which reads in pertinent part: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith." This provision creates a mandatory procedure to be followed by any party seeking to recuse a judge. See *State* v. *Cook,* 183 Conn. 520, 521–23, 441 A.2d 41 (1981). At no time in this case did the defendant file a written motion to recuse, an affi-

davit setting forth factual allegations, or a certificate of good faith by counsel as mandated by § 997 of the rules of practice. Furthermore, the defendant never requested nor demanded a hearing in order to present evidence to support his claim of judicial recusal.

The disqualification of a judge under circumstances as are present here is governed by Canon 3 (C) of the Code of Judicial Conduct. "Under Canon 3 (C) (1) of the Code of Judicial Conduct '[a] judge should disqualify himself [or herself] in a proceeding in which his [or her] impartiality might *reasonably* be questioned . . . .' (Emphasis added.)" *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 744–45, 444 A.2d 196 (1982). The judge's conduct must be measured by an objective standard to the defendant's claim of partiality. Id., 746. We must determine whether there were reasonable grounds for questioning the judge's impartiality. This we cannot do on review without a proper record.

Representations made by counsel are not evidence in the record upon which we can rely in our review of the judge's conduct. Counsel's failure to conform to the dictates of Practice Book § 997, which requirements we hold to be mandatory are a condition precedent to a hearing on a judge's disqualification. See *State* v. *Cook,* supra. The lack of a recusal hearing leaves the record bereft of any factual basis upon which we may base our review. It is the appellant's responsibility to secure a record which is adequate for appellate review, and under normal circumstances, as here, a case will not be remanded to correct a deficiency the appellant should have remedied. *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983); see *Caracansi* v. *Caracansi,* 4 Conn. App. 645, 648–49, 496 A.2d 225 (1985). Since the defendant has failed to supply the necessary record, as was his burden, we are precluded from finding that the action of the trial judge in refusing to recuse himself was clearly erroneous.

The defendant in his second claim of error contends that the trial court erred in failing to rule that the defendant's conduct and utterances were constitutionally protected free speech.

In this case, the defendant was charged and convicted of breach of the peace, in violation of General Statutes § 53a-181, which provides in pertinent part: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . (5) in a public place, uses abusive . . . language . . . ." The words employed by the defendant, as previously quoted, in some circumstances, under modern case law have been held to be constitutionally protected. See generally *State* v. *Beckenbach,* 1 Conn. App. 669, 677–79, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985). They are not constitutionally protected per se, however, but must be viewed in the context of the circumstances during which the utterances were made. *State* v. *Bellamy,* 4 Conn. App. 520, 529, 495 A.2d 724 (1985); *State* v. *Beckenbach,* supra. The use of invectives in the nature of those utilized by the defendant do not automatically come under the shield of the federal or state constitutions as protected speech, but can only be classified in juxtaposition with the other factors present when the words were expressed. The words, standing alone, are, except for their lexicographical definition, without consequence. When, however, as in this case, they are shouted by an obviously intoxicated person in a hostile and challenging confrontation and in front of a crowd of people that is starting to take sides, they may constitute the abusive language and breach of the peace proscribed by the statute. *State* v. *Beckenbach,* supra, 678. The United States Supreme Court has stated that insulting or fighting words, those which by their very utterance inflict injury or tend to incite an immediate breach of the

peace, are not protected speech. *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 2d 1031 (1942). "[S]uch utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no questions under that instrument.' " (Footnote omitted.) *Chaplinsky* v. *New Hampshire,* supra, 572, quoting *Cantwell* v. *Connecticut,* 310 U.S. 296, 309–310, 60 S. Ct. 900, 84 L. Ed. 2d 213 (1940). We hold that the trial court ruled correctly when it refused to dismiss the charge and when it denied the defendant's motion for acquittal on the basis of the defendant's contention that his conduct and speech were constitutionally protected.

The defendant's next claim is that General Statutes §§ 53a-181 (a) (5) and 53a-167a are unconstitutionally vague or overbroad. We disagree. As discussed, words may be abusive or not depending upon the context within which they were uttered. The breach of peace statute simply states the circumstances under which language, otherwise tolerable, becomes an element of a crime. We must look to when, how, where and in whose hearing the words were uttered. The same words that may not be abusive when found in literature, or in appellate opinions for that matter, can become opprobrious when shouted in the face of a police officer in a hostile confrontation before a crowd. The statute clearly sets forth the elements that constitute a breach of peace. Abusive language is not in and of itself proscribed, but must be uttered "with intent to cause inconvenience, annoyance or alarm, or recklessly creating the risk thereof." General Statutes § 53a-181 (a).

The public policy inherent in this statute is not to prevent the free expression of ideas, but to promote a peaceful environment wherein all human endeavors, including the free expression of ideas, may flourish. See, e.g., *Chaplinsky* v. *New Hampshire,* supra; *Cantwell* v. *Connecticut,* supra; *State* v. *Beckenbach,* supra.

The defendant's constitutional attack on General Statutes § 53a-167a on the ground of vagueness or overbreadth is likewise unwarranted. The statute in plain, unambiguous language declares that "[a] person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." This statute meets the requirement of fair notice to the defendant as expressed in *State* v. *Tyson,* 195 Conn. 326, 332, 487 A.2d 1091 (1985). There is no merit to this claim of error.

Finally, the defendant claims that the court erred in denying his motion for acquittal. We have already ruled on the defendant's first ground for acquittal, the constitutional claim of protected speech, in reviewing his second claim of error.

The defendant's second ground for acquittal is adequately addressed by our ruling in *State* v. *Privitera,* 1 Conn. App. 709, 719, 476 A.2d 605 (1984), where we held that the legality of a police officer's conduct while on duty is not an element of the crime of interfering with a police officer as defined by General Statutes § 53a-167a (a).

The remaining grounds upon which the defendant sought acquittal challenge the sufficiency of the evidence to convict the defendant. "The test employed in determining whether the evidence is sufficient to sustain a verdict is whether the trier could reasonably have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative

effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." *State* v. *Davis,* 3 Conn. App. 359, 368, 488 A.2d 837 (1985); *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983); *State* v. *Perez,* 5 Conn. App. 129, 131, 497 A.2d 82 (1985). When reviewing the jury's verdict, the evidence presented at the trial must be given a construction most favorable to sustaining it. *State* v. *Scielzo,* supra. There was ample evidence presented in this case to sustain the verdicts of the jury.

In summary, we hold that there is an insufficient record before us to sustain the defendant's claim of bias and prejudice on the part of the trial judge, and that the court did not err in denying the oral motion to recuse. Further, the court in denying the defendant's motions to dismiss and for acquittal acted properly and in accordance with the law. Finally, the evidence submitted in this case was more than enough to support the jury's verdicts.

There is no error.

In this opinion the other judges concurred.