**Roy G. ROBINSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9108–CR–357.

Court of Appeals of Indiana,
Second District.

March 17, 1992.

Transfer Denied May 11, 1992.

William F. Thoms, Jr., Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant Roy Robinson (Robinson) appeals his conviction for disorderly conduct, a class B misdemeanor,[1] claiming that the evidence was insufficient to support his conviction.

We affirm.

## FACTS

The facts most favorable to the judgment reveal that at approximately 7:40 p.m.

on June 12, 1990, Indianapolis Police Officer Ronald Mills (Mills) was dispatched to a Preston Safeway parking lot in Indianapolis because of citizen complaints that an individual was selling merchandise from his car which was parked in the lot. Mills approached the group of people who had gathered in the lot. He noticed Robinson, who was seated in the car, and asked what he was doing. Robinson immediately became belligerent, accused Mills of harassing him, and told him to "get the fuck away." *Record* at 24. Mills told Robinson to get out of the car and Robinson again told Mills to "get the fuck away." Robinson continued to shout, screaming that the investigation was "bullshit," and that Mills was a "lying mother-fucker."[2] *Record* at 24. Mills then told Robinson three or four more times to be quiet, but when he refused, Mills arrested him.

Robinson was charged with criminal trespass and disorderly conduct. After a bench trial, Robinson was acquitted of criminal trespass and convicted of disorderly conduct.

## ISSUE[3]

Whether the speech for which Robinson was convicted is protected by the first amendment of the United States Constitution?

## DECISION

*PARTIES' CONTENTIONS*—Robinson contends that his speech directed at Mills enjoyed first amendment protection.

The State responds that the conviction for disorderly conduct is supported by sufficient evidence because the words Robinson screamed at Mills were obscenities and "fighting words" which are not constitutionally protected.

---

1. Ind.Code 35–45–1–3 (1988).

2. "Honour thy father and thy mother...." *Exodus* 20:12.

3. Robinson states the issue as whether the evidence is sufficient to support his conviction. However, Robinson's argument—beyond his re-

quest that we consider evidence other than that which supports the conviction, which we will not do, *see Holder v. State* (1991), Ind., 571 N.E.2d 1250, 1253—is based entirely on his position that the activity for which he was convicted is protected by the Constitution, a question of law. Therefore, we rephrase the issue.

*CONCLUSION*—Robinson's conviction for disorderly conduct was supported by sufficient evidence.

The statute under which Robinson was charged provides as follows:

> "A person who recklessly, knowingly, or intentionally:
>
> (2) makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct, a Class B misdemeanor."

IC 35–45–1–3.

■ When this court reviews disorderly conduct convictions based on speech, we must look at the charged events in light of the constitutional protections afforded speech. *Brown v. State* (1991), Ind.App., 576 N.E.2d 605; *Brittain v. State* (1990), Ind.App., 565 N.E.2d 757;[4] *Gilles v. State* (1988), Ind.App., 531 N.E.2d 220, *cert. denied*, 493 U.S. 939, 110 S.Ct. 337, 107 L.Ed.2d 325. In *Brittain*, this court determined that spoken words generally fall within the First Amendment's guarantee of freedom of speech; however, several categories of speech fall outside of this constitutional protection:

> " 'These include the lewd and obscene, the profane, the libelous, and *the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.* 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' ' "

*Brittain* at 760–61, quoting *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 571, 62 S.Ct. 766, 768–69, 86 L.Ed. 1031 (citations and footnotes omitted), (emphasis supplied); *see also Mesarosh v. State* (1984), Ind.App., 459 N.E.2d 426. Additionally, " 'personal epithets and verbal abuse (which may or may not contain vulgarities or obscenities) do not enjoy constitutional protection, and ... engaging in such activity may under certain circumstances constitute disorderly conduct.' " *Brittain, supra.* at 761 quoting *Stults v. State* (1975), 166 Ind.App. 461, 469, 336 N.E.2d 669, 674.

The record before us reflects that on two occasions Robinson screamed at Mills "to get the fuck away." *Record* at 24. Robinson also told Mills that the investigation was "bullshit" and he shouted at him calling Mills a "lying mother-fucker." *Record* at 24.

The use of such repugnant verbiage used under these conditions may not technically constitute "obscene" language because these words were not "in some significant way, erotic," *Cohen v. California* (1971), 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, or dealt "with sex in a manner appealing to prurient interest." *Roth v. U.S.* (1957), 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498. *See also Cavazos v. State* (1983), Ind.App., 455 N.E.2d 618. Rather, we consider Robinson's words to constitute "fighting words" undeserving of constitutional protection. *See Brittain, supra,* (conviction for disorderly conduct affirmed when defendant called police officers "fuckers" and a "son-of-a-bitch"); *Mesarosh, supra, Stults, supra* ("mother-fucker" is a fighting word). They skirt the depths of degradation despite the fact they may be tolerated or in common usage by a certain element of our society. Unfortunately, there is an element of our society that regularly engages in criminal conduct, hardly an excuse for others to do likewise. This does not justify tolerance of such depravity by a police officer or any other citizen.

"It is a sad commentary of our modern society that law enforcement officers must be subjected to insults such as those used in the present case." *Mesarosh, supra* at

---

4. Transfer was not sought in *Brittain, Mesarosh v. State* (1984), Ind.App., 459 N.E.2d 426, or *Cavazos v. State* (1983), Ind.App., 455 N.E.2d

618. Consequently, there is no Indiana Supreme Court authority on this subject.

430; quoting *Evans v. State* (1982), Ind. App., 434 N.E.2d 940, 943. The defendant here cannot claim immunity by wrapping himself in the cloak of Freedom of Speech. *See Brittain, supra; Mesarosh, supra.* These "fighting words," by their very utterance "tend[ed] to incite an immediate breach of the peace." *Brittain, supra.* at 760, quoting *Chaplinsky, supra,* 315 U.S. at 571, 62 S.Ct. at 769.

Judgment affirmed.

HOFFMAN, J., concurs.

SHIELDS, J., dissents with opinion.

SHIELDS, Judge, dissenting.

I dissent.

It is not necessary that the speech in question fall within the category of constitutionally unprotected speech to constitute "unreasonable noise" under the disorderly conduct statute.[1] The disorderly conduct statute imposes reasonable limitations on the time, place, or manner of expression of speech activity if its application is not based on the content of the speech. However, in this case, Robinson's conviction for disorderly conduct was based on the content of his speech, i.e., "shouting obscenities at police". Record at 5. Thus, if Robinson's speech is protected by the Constitution, his conviction must be reversed for lack of sufficient evidence to support the conviction.

Robinson's language does not constitute "obscene" language. Unprotected "obscene" language must be erotic or deal with sex in a manner appealing to prurient interest. *See Cavazos v. State* (1983), Ind. App., 455 N.E.2d 618, 620.

Robinson's words also are not "fighting words." "Fighting words" are words which by their very utterance inflict injury or tend to incite an immediate breach of the peace. *City of Houston v. Hill* (1987), 482 U.S. 451, 461–62, 107 S.Ct. 2502, 2509–10, 96 L.Ed.2d 398; *Cavazos,* 455 N.E.2d at 619. I acknowledge the words "motherfucker" and "fuckers" have been held to constitute "fighting words." *See Brittain v. State* (1990), Ind.App., 565 N.E.2d 757; *Mesarosh v. State* (1984), Ind.App., 459 N.E.2d 426; *Stults v. State* (1975), 166 Ind.App. 461, 336 N.E.2d 669; *see also State v. Weber* (1986), 6 Conn.App. 407, 505 A.2d 1266, *certification denied,* 199 Conn. 810, 508 A.2d 771; *L.J.M. v. State* (1989), Fla.Dist.Ct.App., 541 So.2d 1321, *review denied,* Fla., 549 So.2d 1014; *City of Saint Paul v. Morris* (1960), 258 Minn. 467, 104 N.W.2d 902, *cert. denied,* (1961), 365 U.S. 815, 81 S.Ct. 696, 5 L.Ed.2d 693; *State v. Groves* (1985), 219 Neb. 382, 363 N.W.2d 507. Indeed, at some earlier point in time, the terms undoubtedly had a meaning which would fall within the scope of "fighting words." However, in present common usage, "a mean, despicable, or vicious person," and "anything considered to be despicable, frustrating," Random House Webster's College Dictionary 884 (1991), the words do not fall within that category. So defined, the terms are no more injurious than the term "asshole," defined as "a stupid mean, or contemptible person," *id.* at 82, and which was found not to constitute a "fighting word" in a similar factual setting. *See Cavazos,* 455 N.E.2d 618 (calling police officer an "asshole" while arguing over the arrest of another does not constitute "fighting words"); *see also Buffkins v. City of Omaha* (1990), 8th Cir., 922 F.2d 465, *cert. denied,* (1991), — U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 225 (calling police officer "asshole" at end of narcotics investigation does not constitute "fighting words").

Also, Mills did not claim he viewed Robinson's language as part of an effort to provoke violence. In context, Robinson's language can be viewed only as an expression of his frustration with the detainment and investigation. Robinson wanted Mills to leave him alone.

Certainly I do not condone Robinson's language. It is offensive under any circumstance but especially so when spoken

---

**1.** IC 35–45–1–3 provides in relevant part:
A person who recklessly, knowingly, or intentionally:

(2) makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct....

to a police officer performing his duty. However, speech directed to police officers cannot be held to a higher standard than speech directed to a member of the public at large:

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. "Speech is often provocative and challenging ... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."

*Hill,* 482 U.S. at 461, 107 S.Ct. at 2509 (citations omitted). Furthermore, the constitutional protection of free speech does not vanish merely because speech is offensive. *Texas v. Johnson* (1989), 491 U.S. 397, 414, 109 S.Ct. 2533, 2544–45, 105 L.Ed.2d 342.

Because Robinson's speech is protected by the Constitution, the evidence is insufficient to sustain his conviction.