WEBSTER, Judge.
The state seeks review of an order dismissing a count of a delinquency petition which charged that appellee, T.B.D., placed on the property of another, without obtaining written permission, a burning or flaming cross, in violation of section 876.18, Florida Statutes (1993). The trial court held that section 876.18 was unconstitutional on its face because it infringed upon rights protected by the First Amendment to the United States Constitution. We conclude that section 876.18 criminalizes a substantial amount of expression protected by the First Amendment and is, therefore, overbroad. Accordingly, we affirm.
T.B.D. was charged with a violation of section 876.18, Florida Statutes (1993), which reads:
It shall be unlawful for any person or persons to place or cause to be placed on the property of another in the state a burning or flaming cross or any manner of exhibit in which a burning or flaming cross, real or simulated, is a whole or part without first obtaining written permission *167 of the owner or occupier of the premises to so do. Any person who violates this section commits a misdemeanor of the first degree, punishable as provided in s. 775.-082 or s. 775.083.
T.B.D. moved to dismiss the charge, arguing that the statute violated the free-speech portion of the First Amendment (made applicable to the states by the Fourteenth Amendment) because it was, for a number of reasons, overbroad and, therefore, unconstitutional on its face. The trial court agreed that the statute was facially unconstitutional, relying principally upon R.A.V. v. City of St. Paul, — U.S. -, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). We, likewise, agree that the statute is facially unconstitutional. However, we reach this conclusion based principally upon traditional First Amendment overbreadth analysis.
As an initial matter, it seems to us that, notwithstanding the state’s argument to the contrary, there can be little question about the fact that section 876.18 is intended to proscribe expressive conduct because of disapproval of the ideas expressed by that conduct. Nobody would seriously question the unmistakable message intended to be conveyed by those who resort to such deplorable and offensive means of communication. See, e.g., R.AV. v. City of St. Paul, — U.S.-, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (assuming, without expressly stating, that cross burning involves expressive conduct); United States v. Hayward, 6 F.3d 1241 (7th Cir.1993) (cross burning inevitably involves some degree of expressive conduct); State v. Sheldon 332 Md. 45, 629 A.2d 753 (1993) (those who engage in cross burning do so intending to convey a particular message); State v. Ramsey, — S.C.-, 430 S.E.2d 511 (1993) (discussing connotations historically associated with cross burning). Expressive conduct, which is intended to convey a particular message and is likely to have such an effect, has been recognized as falling within the scope of the protections afforded by the First Amendment. E.g., Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (overturning flag desecration conviction because flag burning is expressive conduct protected by the First Amendment). Government generally has greater freedom to restrict expressive conduct than it has to restrict either the written or the spoken word. Id. at 406, 109 S.Ct. at 2540. However, it cannot proscribe particular conduct because of the message intended to be conveyed. Id. Employing such an analysis, it is clear that section 876.18 implicates First Amendment considerations.
As a general rule, one to whom a statute may constitutionally be applied may not challenge that statute on the ground that, in other situations, the statute might be applied unconstitutionally to others. However, what is known as the First Amendment over-breadth doctrine is one recognized exception to that general rule. “The doctrine is predicated on the sensitive nature of protected expression: ‘persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.’” New York v. Ferber, 458 U.S. 747, 768, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113, 1130 (1982) (citing Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73, 86 (1980), and Gooding v. Wilson, 405 U.S. 518, 521, 92 S.Ct. 1103,1105, 31 L.Ed.2d 408, 413 (1972)). Accordingly, criminal statutes which appear to infringe upon First Amendment rights “must be scrutinized with particular care.” Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410 (1987).
Recognizing that the overbreadth doctrine is “strong medicine,” the Court has held that it should be used “sparingly and only as a last resort.” Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 841 (1973). As a result, “particularly where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep.” Id. at 615, 93 S.Ct. at 2918. In City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800-01, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772, 783-84 (1984), the Court said:
The concept of “substantial overbreadth” is not readily reduced to an exact definí *168 tion. It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself — the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court.... In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.
(Footnote omitted.)
Applying this doctrine to section 876.-18, we conclude that the overbreadth of that statute is both “real” and “substantial.” The statute is not, by its terms, limited to types of expressive conduct traditionally recognized as being entitled to little or no protection under the First Amendment. Unlike the ordinance in R.A.V. v. City of St. Paul, section 876.18 may not fairly be read as intended to be limited in its application to “ ‘fighting’ words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.” Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942). Nor may section 876.18 be read as intended to be limited in its application to “advocacy [which] is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.” Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430, 434 (1969). Rather, the statute also clearly proscribes expressive conduct which, however odious the intended message might be to the overwhelming majority, is, nevertheless, protected by the First Amendment. As the Court noted in Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134 (1949):
Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute ..., is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.
Similarly, but more recently, overturning a conviction for flag desecration, the Court has said that “[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.” Texas v. Johnson, 491 U.S. at 414, 109 S.Ct. at 2545. See also Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827 (overturning conviction under criminal syndicalism statute for conduct and speech at Ku Klux Klan rally).
The following is offered, by way of illustration only, as one situation in which enforcement of section 876.18 would proscribe expressive conduct protected by the First Amendment: Suppose a group, such as the Ku Klux Klan, were holding a rally upon property owned by one of its members in a rural area where surrounding property owners were likewise members (or otherwise in sympathy with that organization’s views) and, with the intent to communicate disagreement with the policies (whether real or perceived) of government regarding race relations (or religious freedom), burned a cross. Suppose, further, that, whether by design or by pure happenstance, a law enforcement officer who found such conduct offensive drove up just as the cross was being lit, and decided to arrest those responsible for lighting the cross for violating section 876.18. As written, notwithstanding the fact that the rally was taking place upon the property of a member who had, at least tacitly, given his approval to the events taking place, those charged would be subject to conviction unless they had “first obtained] written permission of the owner” of the property to burn the cross. Neither oral permission nor lack of any malicious intent could be raised as a defense, given the plain wording of the statute.
While merely one example, we believe that the foregoing is sufficient to demonstrate that the likelihood that fear of criminal pros *169 ecution under the statute will have a chilling effect on the exercise by those not before the court of expressive conduct protected by the First Amendment is both “real” and “substantial.” Accordingly, we conclude that section 876.18 violates the First Amendment overbreadth doctrine and is, therefore, unconstitutional. See R.A.V. v. City of St. Paul, — U.S. —,—, 112 S.Ct. 2538, 2550-60 (White, J., concurring) (arguing that ordinance should have been declared unconstitutional based upon overbreadth doctrine, notwithstanding narrowing, “fighting words,” construction of Minnesota Supreme Court).
Although we decide this case based principally upon the First Amendment over-breadth doctrine, we note that the outcome would be the same were we to conclude that the statute was susceptible to some type of narrowing construction, thereby requiring application of the analysis used in R.A.V. v. City of St. Paul. There, the Court noted that it was bound by the Minnesota Supreme Court’s construction limiting the ordinance’s reach to “only those expressions that constitute ‘fighting words.’ ” Id. at-, 112 S.Ct. at 2542. Notwithstanding that narrowing construction, however, the Court concluded that the ordinance was facially unconstitutional because it proscribed only ‘“fighting words’ that insult, or provoke violence, ‘on the basis of race, color, creed, religion or gender,’” while permitting other types of “fighting words,” “containing abusive invective, no matter how vicious or severe” (id. at -, 112 S.Ct. at 2547), thereby discriminating based upon the content of the expression, rather than the mode (id. at-, 112 S.Ct. at 2548-49); and because “content discrimination [was not] reasonably necessary to achieve St. Paul’s compelling interests.” Id. at-, 112 S.Ct. at 2550.
Were we able to conclude that section 876.18 was susceptible to a construction limiting its reach to only “fighting words” or to conduct intended (and likely) to incite imminent lawlessness, we would be constrained to conclude, further, that the statute was, nevertheless, unconstitutional on its face pursuant to R.A.V. v. City of St. Paul because (1) section 876.18 proscribes only one type of such conduct, based upon the content of the message; and (2) such content discrimination is not necessary to further the legitimate interest sought to be promoted by the statute. On the contrary, as was true in R.A.V. v. City of St. Paul (id. at-, 112 S.Ct. at 2541), here T.B.D. might conceivably have been charged for his actions with any of a number of other offenses, including assault (§ 784.011, Fla.Stat.), breach of the peace or disorderly conduct (§ 877.03, Fla.Stat.), criminal mischief (§ 806.13, Fla.Stat.), criminal nuisance (§ 823.01, Fla.Stat.), failure to control or report a dangerous fire (§ 877.15, Fla.Stat.) or trespass (§§ 810.08, 810.09, Fla. Stat.); and the penalty might have been enhanced if the commission of the offense “evidence[d] prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, or national origin of the victim.” § 775.085, Fla.Stat. We share, wholeheartedly, the Supreme Court’s “belief that burning a cross in someone’s front yard is reprehensible.” Id. at -, 112 S.Ct. at 2550. We do not mean to suggest by this opinion that conduct such as that with which T.B.D. was charged should be condoned, or left unpunished. We hold only that such conduct may not be proscribed by a statute which infringes significantly upon rights protected by the First Amendment.
AFFIRMED.
KAHN and DAVIS, JJ., concur.