656 So.2d 479 (1995)
STATE of Florida, Appellant,
v.
T.B.D., a child, Appellee.
No. 84013.
Supreme Court of Florida.
June 15, 1995.
Rehearing Denied July 27, 1995.
Robert A. Butterworth, Atty. Gen., James W. Rogers, Bureau Chief, Crim. Appeals, *480 Sonya Roebuck Horbelt, Asst. Atty. Gen. and Gregory Durden, Chief of Civil Rights, Tallahassee, for appellant.
James T. Miller of Corse, Bell & Miller, P.A., Jacksonville, for appellee.
Ted H. Bartelstone, Miami, amicus curiae, for Individual Rights Foundation.
SHAW, Justice.
We have on appeal State v. T.B.D., 638 So.2d 165 (Fla. 1st DCA 1994), wherein the district court declared Florida's anti-cross burning statute, section 876.18, Florida Statutes (1993), unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse.

I. FACTS
T.B.D., a minor, was charged with erecting a flaming cross on the property of Atef Abdul-Nour in Jacksonville on August 2, 1993, in violation of section 876.18, Florida Statutes (1993). The trial court held the statute unconstitutional under the First Amendment and the district court affirmed. The State appealed.
T.B.D. claims that the statute on its face violates the First Amendment because it is a content-based law prohibiting expressive conduct. He postulates that the statute violates R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), is overbroad, and is unnecessary in light of other Florida laws covering related conduct.
Chapter 876, Florida Statutes (1993), entitled "Criminal Anarchy, Treason, and Other Crimes Against Public Order," protects Florida citizens against anarchy, treason, and terrorism. Section 876.18 prohibits the placing of a flaming cross on the property of another without written permission:
876.18 Placing burning or flaming cross on property of another.  It shall be unlawful for any person or persons to place or cause to be placed on the property of another in the state a burning or flaming cross or any manner of exhibit in which a burning or flaming cross, real or simulated, is a whole or part without first obtaining written permission of the owner or occupier of the premises to so do. Any person who violates this section commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
§ 876.18, Fla. Stat. (1993). Because this statute restricts expressive activity, the First Amendment is implicated.

II. THREATS AND FIGHTING WORDS
The First Amendment promotes the free flow of ideas and information in our society by prohibiting government from restricting speech or expressive conduct because of the message expressed. See, e.g., Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Content-based restrictions are presumptively invalid. See, e.g., Police Dept. of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).
Limited exceptions to this rule are allowed where the speech or expressive conduct constitutes "no essential part of any exposition of ideas, and [is] of such slight social value as a step to truth that any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Such speech "can, consistently with the First Amendment, be regulated because of [its] constitutionally proscribable content." R.A.V., 505 U.S. at 383, 112 S.Ct. at 2543. Examples of proscribable speech include defamation and obscenity. See id.
"Threats of violence" against individual citizens is one such category. Cf. Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (threats of violence against the President are outside the First Amendment). Threats of violence can be regulated because government has a valid interest in "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." R.A.V., 505 U.S. at 388, 112 S.Ct. at 2546. "Fighting words" is another such proscribable category. Chaplinsky. These words "by their very utterance inflict injury or tend to incite an immediate breach of the peace." Id., 315 U.S. at 572, 62 S.Ct. at 769.
*481 The present statute proscribes conduct that falls within the category of "threats of violence." An unauthorized cross-burning by intruders in one's own yard constitutes a direct affront to one's privacy and security and has been inextricably linked in this state's history to sudden and precipitous violence  lynchings, shootings, whippings, mutilations, and home-burnings. The connection between a flaming cross in the yard and forthcoming violence is clear and direct. A more terrifying symbolic threat for many Floridians would be difficult to imagine.
The banned conduct also constitutes "fighting words." A flaming cross erected by intruders on one's property "inflicts [real] injury" on the victim in the form of fear and intimidation and also "tends to incite an immediate breach of the peace" where the victim or intruder may be inclined to take further action. See generally Chaplinsky. In the lexicon of the United States Supreme Court, it is the extraordinarily threatening mode of expression, not the idea expressed, that is intolerable. See R.A.V., 505 U.S. at 391-93, 112 S.Ct. at 2548-49. Again, it is difficult to imagine a scenario more rife with potential for reflexive violence and peacebreaching.

III. R.A.V. v. CITY OF ST. PAUL

The United States Supreme Court addressed the issue of proscribable speech in R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), where a juvenile was charged with burning a cross in a neighbor's yard in violation of a city ordinance providing:
Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.
St. Paul, Minn.Legis.Code § 292.02 (1990).
The United States Supreme Court held the ordinance invalid because it played favorites: Rather than proscribing certain types of "fighting words" across the board, the ordinance prohibited such words only in special cases, i.e., only where the words may offend due to "race, color, creed, religion or gender." "Such a restriction would open the door to government favoritism and protectionism of certain topics and view-points and implicit censorship of disfavored ones... ." State v. Stalder, 630 So.2d 1072, 1075 (Fla. 1994).
The present statute comports with R.A.V. because the Florida prohibition is "not limited to [any] favored topics," but rather cuts across the board evenly. No mention is made of any special topic such as race, color, creed, religion or gender. The targeted activity is proscribed because it is one of the most virulent forms of "threats of violence" and "fighting words" and has a tremendous propensity to produce terror and violence. The statute is an even-handed and neutral ban on a manifestly damaging form of expressive activity.

IV. OVERBREADTH
A statute is overbroad "if in its reach it prohibits constitutionally protected conduct." Grayned v. City of Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). The overbreadth doctrine comes with a strong caveat, particularly where conduct, as opposed to pure speech, is concerned: "Application of the overbreadth doctrine ... is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).
[T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct  even if expressive  falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct... . To put the matter another way, *482 particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.
Id., 413 U.S. at 615, 93 S.Ct. at 2917-18.
We conclude that T.B.D.'s overbreadth challenge to the statute must fail because the full range of conduct embraced by the statute's plain language  the unauthorized placing of a flaming cross on the property of another  is eminently proscribable under the First Amendment for the reasons explained above. Although one might be able to imagine a hypothetical situation wherein the statute could be impermissibly applied, the threat of overbreadth is speculative at best and is insufficiently substantial to invalidate this statute on its face:
The concept of "substantial overbreadth" is not readily reduced to an exact definition. It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge... . In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.
City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800-01, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772, 783-84 (1984).

V. CONCLUSION
Florida has a compelling interest in protecting the right of each of its citizens to live at peace in the sanctity of his or her home, free from violence and the threat of violence. Given this state's history and its vast cultural and ethnic diversity, we find the present statute reasonably necessary to promote the state's goals. While other Florida statutes may address unauthorized cross-burnings indirectly, e.g., via trespassing or disorderly conduct bans, those restrictions fail to confront the issue head on and to affirmatively discourage the conduct.
The statute is a legitimate legislative attempt to protect Floridians of every stripe from a particularly reprehensible form of tyranny. The statute plays no favorites  it protects equally the Baptist, Catholic, Jew, Muslim; the Communist, Bircher, Democrat, Nazi, Republican, Socialist; the African-American, Caucasian, Haitian, Hispanic, native American, Vietnamese; the heterosexual, the male homosexual, the lesbian; the established politician, the neophyte, the activist; the author, the editor, the publisher; the artist, the curator; the teacher, the school administrator; the union organizer, the plant owner.
The statute ensures that those who exercise freedom of association or who join in robust debate on controversial issues need not fear this particular threat of violence. Although the First Amendment confers on each citizen a powerful right of self-expression, it gives no citizen a boon to launch terrorist raids against his or her neighbor. Few things can chill free expression and association to the bone like night-riders outside the door and a fiery cross in the yard.
Based on the foregoing, we find section 876.18, Florida Statutes (1993), constitutional. We reverse the district court decision in T.B.D.
It is so ordered.
GRIMES, C.J., and KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
While I would personally prefer to uphold the constitutionality of this statute and to prohibit through this statute the type of conduct at issue, I find that the United States Supreme Court's decision in R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), eliminates any choice that I have in this matter. R.A.V. not only mandates a holding that this statute is unconstitutional but even goes so far as to explain how to draft a law that constitutionally prohibits this type of conduct. In my view, rather than attempting to uphold this statute, we should declare the statute to be unconstitutional and strongly suggest to the *483 legislature how it can immediately draft a statute that is enforceable.
The issue in this case is not whether the State can prohibit the contemptible act of cross-burning. Clearly, it can. As noted by the district court, T.B.D. could have been charged with any number of offenses other than the one at issue, including assault, breach of the peace or disorderly conduct, criminal mischief, criminal nuisance, failure to control or report a dangerous fire, or trespass. The issue here is whether the State has prohibited cross-burning under this statute in a manner consistent with the First Amendment as interpreted by the United States Supreme Court.
In R.A.V., the United States Supreme Court reviewed a law that was almost identical to the statute at issue here. The statute at issue in R.A.V. read as follows:
Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.
R.A.V., ___ U.S. at ___, 112 S.Ct. at 2541. As in the instant case, in R.A.V. the defendant had burned a cross on the private property of another. In analyzing that ordinance, the United States Supreme Court found it to be unconstitutional because it discriminated on the basis of content in that it prohibited otherwise permitted speech solely on the basis of the subject the speech addressed. Even though the statute in R.A.V. reached only those symbols or displays that aroused "anger, alarm or resentment in others," which were otherwise characterized as "fighting words," the Court found that the prohibition of such "fighting words" could not be limited in connection with other "bias-motivated hatred" such as cross-burning. Similarly, the statute at issue in our case prohibits the "bias-motivated hatred" of burning a cross. Contrary to the majority's conclusion, it is not just the subjects to which protection is afforded that must be neutral, it also is the expressive activity itself that must be prohibited in a neutral fashion. Under the principles established by the R.A.V. decision, if the legislature were to enact a statute that proscribed all burnings and fires that are set with the intent to threaten or intimidate the owner or occupant of the property, rather than proscribing the burning of a cross, the statute would be constitutional.
I strongly suggest that the legislature examine this matter and enact a statute in accordance with the principles directed by R.A.V. As the United States Supreme Court expressed in R.A.V., although the act of "burning a cross in someone's front yard is reprehensible," the State has "sufficient means at its disposal to prevent such behavior without adding the First Amendment to the fire." ___ U.S. at ___, 112 S.Ct. at 2550.