377 So.2d 1018 (1979)
STATE of Louisiana
v.
Marion NEAMES.
No. 64044.
Supreme Court of Louisiana.
November 1, 1979.
Dissenting Opinion January 4, 1980.
Lemuel E. Hawsey, III, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Michael E. Ponder, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
PER CURIAM.
The principal issue before us is whether a conviction of guilty, once set aside by the trial court, can be reinstated upon the trial court's subsequent conclusion that it had erred in the vacation of the original conviction.
After bench trial, unrepresented by counsel, the defendant was convicted of making harassing telephone calls to his sister and brother-in-law over a period of three months. La.R.S. 14:285(A)(2). He was sentenced on October 13, 1978 to two years in the parish prison.
Subsequently, on November 22, 1978, the trial court set aside this conviction and sentence, found the accused not guilty by reason of insanity, and ordered his commitment to a mental hospital for examination.
The accused, for the first time retaining counsel, then filed a writ of habeas corpus. The writ questioned the legality of the accused's commitment.
At the hearing on the writ, the trial court vacated its order of November 22 (which had vacated the earlier conviction in October). This had the effect of reinstating the earlier conviction and sentence.
The defendant's appeal questions the reinstatement of the original sentence.

I.
The colloquy at the time of the original sentence of October 13, at which at the urging of the trial court the defendant made statements which equivocally asserted an intent to appeal, indicates non-normal statements and attitudes on the part of the defendant. The trial judge indicated concern at that time with the defendant's adamant failure to request a sanity commission and his insistence that, despite mental troubles in the past, he was perfectly competent and sane.
After the sentence, the trial court ex proprio motu issued a rule to amend sentence. The hearing on the rule took place on November 22. The defendant was still unrepresented by counsel.
At this hearing, the conscientious trial judge stated that, based on the pre-sentence *1019 report indicating a medical opinion casting doubt on the defendant's competency, he had questioned another doctor (mentioned by the accused in the sentencing colloquy) and had become aware of a civil commitment hearing which had taken place. In that hearing, three psychiatrists and the coroner had concurred in the view that the accused could not distinguish between right and wrong.
The trial judge concluded: After lengthy conversation with doctors and people associated with the accused, "I have come to the conclusion in fairness and in justice I cannot let your sentence or conviction stand." The trial judge set aside the conviction and sentence based upon the accused's mental incapacity.

II.
The trial court thus concluded that this mental condition had caused the accused to refuse counsel at the trial or for the purported appeal. Because of his mental condition, the accused had likewise failed, despite requests, to take any requisite step to advance the purported appeal.[1]
The trial court noted that it had erroneously failed earlier to notice the accused's earlier mental incapacity. In effect, the trial court held that the accused's waiver of counsel, his failure to raise the defense of not guilty by reason of insanity, and his equivocal assertion of an appeal (which the accused had then refused to take steps to complete), were all ineffectual because of the accused's mental condition. Therefore, because the accused lacked the mental capacity to do so or to retain counsel to do so, the trial court set aside the original conviction and sentence as if the accused through counsel had properly raised these issues through appropriate post-conviction habeas corpus proceedings. See State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977).

III.
The issues thus posed concern the legality of the trial court's vacation of the initial sentence and the legality of the reinstatement of the sentence upon the habeas hearing, which had sought only the accused's release.
Under our jurisprudence, a trial court's vacation of a conviction, even if beyond its authority, effectively and conclusively invalidates the verdict thus invalidated.[2]State v. Reed, 315 So.2d 703 (La.1975); State Oglesby, 164 La. 329, 113 So. 865 (1927). This jurisprudential rule was adopted to effectuate double jeopardy protections of our state constitution, now La.Const. of 1974, Art. 1, Section 15.[3]
As a consequence, not only are the courts prohibited from resurrecting the vacated verdict under the jurisprudence cited, but likewise the state is barred from further prosecution on the charge. The present defendant is therefore entitled to be discharged, as urged by the habeas corpus writ filed in the present proceedings (questioning the commitment of the accused following the vacation of the original plea).

Decree
Accordingly, the defendant's conviction is reversed and set aside, and the defendant ordered discharged.
*1020 REVERSED; DEFENDANT ORDERED DISCHARGED.
MARCUS, J., dissents.
SUMMERS, C. J., dissents and assigns reasons.
BLANCHE, J., dissents and hands down reasons.
SUMMERS, Chief Justice (dissenting).
Appellant Marion F. Neames, Jr., was charged by bill of information filed on March 15, 1978, with two counts of harassing telephone calls to Mr. and Mrs. Frank Hernandez over a period beginning April 24, 1977 and ending July 17, 1977. The offense, a misdemeanor, is defined by Article 285(A)(2) of the Criminal Code as follows:
"A. No person shall:
. . . . .
(2) Make repeated telephone communications anonymously or otherwise in a manner reasonably expected to annoy, abuse, torment, harass, embarrass or offend another, whether or not conversation ensues ...."
After trial on August 1 and 8, 1978, defendant was convicted on both counts and the trial judge ordered a presentence report. Although defendant refused counsel at his trial, the trial judge appointed an attorney to advise and assist him. On October 13, 1978 at the sentence hearing, with defendant and the appointed counsel present, a colloquy developed between the sentencing judge and defendant in which defendant stated that he was being railroaded because one of the judges had imposed an exhorbitant bail bond and the medical doctor at the jail suggested that he was "crazy". This was unreasonable, according to defendant, because, as he said, he worked with about 600 people who thought differently.
At this point the trial judge referred to the sentencing report and said, "A lot of people who know you think you have some problems, people who have your interest at heart, not your enemies." "Like who?", defendant asked, to which the judge replied, "Some of the people you work with." Defendant then asked, "Would you mind telling me who that was?" The trial judge refused.
Thereafter defendant was sentenced "to two years in jail." On defendant's oral motion the trial judge entered an order of appeal on his behalf, defendant having refused counsel. He was released on bail, pending appeal and the attorney assisting him was discharged.
In the meantime, it having come to the attention of the trial judge that defendant had taken no steps to perfect his appeal, defendant was subpoenaed to appear before the court on November 22, 1978. On that occasion the trial judge stated that the presentence report he requested reflected that at least one doctor had expressed an opinion relating to defendant's mental condition.
On the basis of discussions he had with several doctors, a fellow judge of that court, a civil commitment hearing involving defendant, the results of that hearing, the opinions of three psychiatrists and the coroner, all of whom agreed that defendant could not distinguish between right and wrong, the trial judge concluded that the sentence he had imposed could not stand. Accordingly, he set aside the October 13, 1978 sentence, finding defendant not guilty by reason of insanity. He then ordered defendant committed to East Louisiana State Hospital, Civil Division, for examination by a sanity commission, to report whether defendant could be safely released without possible harm to himself or others. Pursuant to this order defendant was confined in the East Louisiana State Hospital.
A petition for habeas corpus was filed by defendant's retained attorney on December 14, 1978 alleging that the trial judge having found defendant not guilty by reason of insanity, and no judicial commitment having been instituted, the court was without authority to order him confined to a mental institution under Article 654 of the Code of *1021 Criminal Procedure.[1] That Article, according to the defense, applied only to felonies. Alternatively, the petition for habeas corpus alleged that the verdict of not guilty by reason of insanity was not responsive to the charge because the only plea entered by defendant was "not guilty". It was the defense position that since the October 13, 1978 sentence had been set aside, and the November 22, 1978 sentence was ineffective, defendant should be discharged.
At the December 19, 1978 hearing on this petition the State's counsel conceded that the discussions off the record which led to the November 22 setting aside of defendant's October 13 sentence and his incarceration in the East Louisiana State Hospital was not legal evidence properly entered in the record. Consequently, the State took the position the November 22 action was without effect, was not a sentence and should be set aside and the October 13 sentence should then be reinstated. It was then suggested that the court order execution of the October sentence of imprisonment for two years in the parish prison; or, convene a sanity commission to determine defendant's mental capacity to stand trial; and, finally, the State submitted that the court could amend its sentence of October 13 to provide treatment for defendant and protection for the community.
Defense counsel, however, restated his position that the order of commitment or sentence of November 22 should be set aside and defendant should be discharged.
In this posture of the case the trial judge set aside the November 22 order. The State then moved that the accused be remanded to the parish prison to serve the sentence of October 13. This motion was based on the fact that the time allowed to lodge and perfect defendant's appeal had expired, he posted no bond for transcription of the record, and filed no assignments of error. In response the trial judge ruled that, having granted the order of appeal, the trial court had no jurisdiction to rule on the merits of the motion or to order defendant discharged as the defense urged.
The State objected and assigned error, giving notice that the State would apply to the Supreme Court for writs to review the matter.
This out of time appeal followed.
Three errors were assigned and are urged on appeal.
Assignment 1: Defendant contends Article 285(A)(2) of the Criminal Code is unconstitutional because it is overly broad and therefore impermissibly jeopardizes the freedom of speech and expression guaranteed by the First and Fourteenth Amendments to the United States Constitution and by Article I, Section 7 of the Louisiana Constitution. The defense also contends the Article is so vague and indefinite that it violates the due process guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Louisiana Constitution.
According to defendant the State may not impose criminal penalties for speech that is protected by the State and Federal Constitutions. Regardless of how offensive, abusive, or vulgar it may be, the defense adds, speech is constitutionally protected unless it constitutes "fighting words" *1022 "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942).
The language of the Article is broad enough, the defense argues, to apply to words spoken over a telephone or to conduct, such as causing another's telephone to ring, or to both spoken words and conduct. The defense concludes that because the Article is susceptible of application to constitutionally protected speech it is facially unconstitutional, and implicit in its overbreadth is an element of vagueness which licenses the trier of fact to create its own standard of guilt or innocence in each case. Pretermitting the question of this belated plea attacking the Article's constitutionality, we find the Article constitutional.
Applying the rule noscitur a sociis this Court upheld the constitutionality of the language embodied in Article 285(A)(2) in State v. Meunier, 354 So.2d 535 (La.1978) saying:
"The words are common and ordinary with well-defined meanings. It is common knowledge that it is unlawful to use a telephone for the purposes set forth in the statute. It would be impracticable to set forth in detail the numerous forms harassment could take."
The highly important right to communicate considered against the citizen's very basic right to be free from repeated, unwanted telephone communications requires that such communications not be imposed upon unwilling recipients. No one has the right to deprive another of his basic right to be free from such communications. Cf. Rowan v. United States Post Office Department, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).
A telephone subscriber cannot ordinarily refuse to answer calls, for to do so involves the risk of missing important messages. Every ring therefore is a summon to the phone. When the caller uses the phone, not to convey a message but to repeatedly annoy another, the rights of the recipient are abused. Because of this it is not the communication which the statute punishes but, instead, the manner in which it is exercised. The State has the power to regulate the manner of communication without undue impairment of the communicant's constitutional guaranteed right of freedom of speech.
This assignment is without merit.
Assignment 2: Defendant contends error occurred because the trial judge failed to afford him access to his presentence investigation report before imposing sentence.
As the recitation of the colloquy between defendant and the trial judge at the sentence hearing on October 13 discloses, the trial judge referred to the presentence report saying it disclosed that, "A lot of people who know you think you have some problems, people who have your interest at heart, not your enemies." When defendant asked who they were the trial judge refused to disclose their names. The record indicates, however, that the trial judge had disclosed the contents of the report to the attorney appointed to assist defendant.
No objection was made to the ruling denying defendant access to the report. Furthermore, since a remand for resentencing is necessary here, the issue of defendant's right to access to the report may again be urged.
Assignment 3: According to the defendant, the trial judge failed to a) state for the record the condsiderations taken into account and the factual basis therefor in imposing sentence, and to b) follow the sentencing guidelines set forth in Article 894.1 of the Code of Criminal Procedure.
A remand for resentencing is necessary in any event. The record reflects that a single sentence of two years in the parish jail was imposed, although defendant was charged with two violations of Article 285(A)(2).
When a defendant is convicted of two offenses constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.Code Crim.Pro. art. 883.
*1023 The sentence here can be interpreted as two sentences of two years each to run concurrently since the court did not direct that they be served consecutively. Another interpretation suggested is that there are two one-year sentences to be served concurrently. This should be clarified and for that reason the case should be remanded for resentencing. The trial judge could then explore the question of defendant's mental capacity to proceed prior to sentence, a matter of much concern to him heretofore. In any resentencing the trial judge should be guided by the provisions of Article 894.1 of the Code of Criminal Procedure.
Therefore, I would affirm the conviction but set aside the sentence and remand for resentencing.
BLANCHE, Justice (dissenting).
I respectfully dissent. The order of appeal herein deprived the court of any authority it may have had to set aside its conviction and sentence. State v. Battaglia and Reynier, 377 So.2d 264 this day handed down, and C.Cr.P. art. 916.
NOTES
[1] Based upon the unanimous opinion of the psychiatrists, as well as of the record at the civil commitment hearing, the trial judge also on November 22 entered a plea of not guilty and not guilty by reason of insanity for the accused and entered verdict on that plea. Although this action was done in the interest of avoiding penal confinement for the accused and of securing mental treatment for him, the trial judge subsequently (at the habeas hearing on December 19, 1978) recognized that he was not empowered to take this action on a plea not raised and on evidence not formally heard by him. Accordingly, the trial court vacated its rulings of November 22.
[2] Because of this jurisprudence rule, we do not reach the propriety of the trial court's action in vacating the original verdict, nor consider the state's arguments questioning the legality of the vacation of the sentence.
[3] Article 1, Section 15: "* * * No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained."
[1] Art. 654, La.Code Crim.Pro. provides:

"When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment.
"When a defendant is found not guilty by reason of insanity in any other felony case, the court shall remand him to the parish jail or to a private mental institution approved by the court and shall promptly hold a contradictory hearing at which the defendant shall have the burden of proof, to determine whether the defendant can be discharged or can be released on probation, without danger to others or to himself. If the court determines that the defendant cannot be released without danger to others or to himself, it shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. If the court determines that the defendant can be discharged or can be released on probation, without danger to others or to himself, it shall either order his discharge, or order his release on probation subject to specified conditions for a fixed or an indeterminate period."