MR. JUSTICE HUNT,
dissenting:
I dissent and would reverse.
Appellant was convicted of one count of disturbing the peace. Cities and towns in Montana are empowered to prevent and punish disturbances of the peace by Sec. 7-32-4302, MCA, which defines “disturbances of the peace” as follows:
“. . . intoxication . . . fights, riots, loud noises, disorderly conduct, obscenity, and acts or conduct calculated to disturb the public peace or which are offensive to public morals.”
According to Sec. 45-8-101(1), MCA, “A person commits the offense of disorderly conduct if he knowingly disturbs the peace by:
“(a) quarreling, challenging to fight or fighting;
“(b) making loud or unusual noises;
“(c) using threatening, profane, or abusive language . . .”
Appellant was charged and convicted of violating Whitefish Municipal Ordinance 9.64.010 which provides:
“No person within the municipality, or within three miles of the municipal limits, shall willfully and maliciously disturb the peace and quiet of any street, neighborhood, family, or person by loud, tumultuous noise, or by tumultuous or offensive conduct, or by using offensive, loud radio or television sets, or by threatening, quarreling, scolding, hallooing, hollering, challenging to fight, or fighting, or by cursing, swearing, uttering obscene, profane, vulgar, or indecent language in the presence of any person or persons, or by committing any obscene, vulgar, indecent, or lewd act in any public place, or in view of any person or persons.”
Many courts, including the United States Supreme Court, have held that an act constitutes a disturbance of the peace or breach of *444 the peace only if it poses an immediate threat of violence or would tend to provoke violence from others.
Of the several events that occurred surrounding this arrest it is quite probable that a lawful arrest could have resulted if for the proper reasons. Here, though, the record shows that the defendant was arrested and convicted solely on the basis of an expression which the peace officer took personally. When an officer of the law, as a public servant, approaches a citizen and the latter becomes irate for some reason and unleashes some verbal abuse, no arrest should be made on that basis alone. A public servant, particularly and officer of the law, who is not at times (rightfully or wrongfully) the subject or object of someone’s aggravation is simply not doing his or her job. A policeman meeting an intoxicated citizen has a reasonable expectation of some conflict. A policeman in the performance of his duty should be able to take an insult with a proverbial “grain of salt.” When grounds for arrest exist but no arrest occurs until the arresting officer is insulted it is a strong indication that the arrest is for a personal reason rather than for the public good. Here the defendant who had apparently been drinking gave no indication of committing violence although he was sounding off with abusive and offensive language.
While I agree with the majority that the right to free speech is not absolute, that right is so important that there should be great care in respecting it even when the language contains words that reasonable people find to be offensive and unacceptable. Intoxicated people do not often speak with eloquence but are more likely to express themselves in language that is base and coarse. Those in authority should be very careful about taking such remarks personally and careful about exercising their power as a weapon of retribution.
Appellant’s conduct on the night in question did not pose a threat of violence to the members of the Whitefish community, nor did it pose a threat to the police officers involved.
In Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031, 1036, the Court, in upholding the conviction for breach of the peace by the lower court, construed the applicable statute narrowly, limiting its application to instances of actual immediate threats of violence:
“The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight . . . Such words, as ordinary men know, are likely to cause a fight . . . Derisive and annoying words can be taken as coming within the pur *445 view of the statute as heretofore interpreted only when they have the characteristic of plainly tending to excite the addressee to a breach of the peace . . . The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee . . .”
In Terminiello v. Chicago (1949), 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134, reh. denied 337 U.S. 934, 69 S.Ct. 1490, 93 L.Ed. 1740, the Court held that, for an utterance to constitute a breach of the peace, it must pose a threat far above mere public annoyance or unrest:
“. . . freedom of speech, though not absolute ... is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.”
There is nothing in the record to show that appellant’s conduct would “likely produce a clear and present danger of a serious substantive evil.”
The Minnesota Supreme Court, faced with this same question and a similar statute, said in Matter of the Welfare of S.L.J. (Minn. 1978), 263 N.W.2d 412, 419-420:
“Having narrowly construed Sec. 609.72, subd. 1(3), we must now determine whether the words ‘fuck you pigs’ were ‘fighting words.’ The real test is whether, under the facts and circumstances of this case, appellant’s mere utterance of these vulgar, offensive, insulting words would ‘ “tend to incite an immediate breach of the peace,” ‘ Lewis v. City of New Orleans, 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 218; are ‘inherently likely to provoke violent reaction,’ Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291; or ‘hav[e] an immediate tendency to provoke retaliatory violence or tumultuous conduct by those to whom such words are addressed,’ State v. Hipp, 298 Minn., 81, 87, 213 N.W.2d. 610, 614. The specific facts of the case are also important because, as in Lewis, whether words are ‘fighting words’ depends on the circumstances surrounding their utterance.
“Under this test, appellant’s conviction for disorderly conduct cannot stand. While it is true that no ordered society would condone the vulgar language used by this 14-year-old child, and as the court found, her words were intended to and did arouse resentment in the officers, the constitution requires more before a person can be convicted for mere speech. In this case, the words were directed at two police officers sitting in their squad car from a distance of 15 to 30 *446 feet by a small, 14-year-old child who was on her way home when she turned to the officers and made her statement. With the words spoken in retreat from more than 15 feet away rather than eye-to-eye, there was no reasonable likelihood that they would tend to incite an immediate breach of the peace or to provoke violent reaction by an ordinary, reasonable person. Thus, the state has failed to prove that under these circumstances the words uttered by the appellant were ‘fighting words’ and both her conviction for disorderly conduct and the finding of delinquency based on the conviction must be reversed.”
The facts in this case, while stronger perhaps than in the Minnesota case still fall far short of being “fighting words,” sufficient to incite violence.
Further, I would reverse because I cannot agree that the Whitefish ordinance by itself, would pass a constitutional analysis under any current United States Supreme Court decision. This Court now states that it “narrowly construes” the ordinance. Narrow construction does bring an overly broad ordinance within the Constitution, but not without a proper analysis and guidance to the public as to how the ordinance is to be construed. It is doubtful whether the ordinance in issue here can be legitimately narrowly construed by this Court without rewording the entire ordinance.
I would reverse.