No. 99–781. AVIS RENT A CAR SYSTEM, INC., ET AL. v. AGUILAR ET AL. Sup. Ct. Cal. Certiorari denied.

JUSTICE THOMAS, dissenting.

"Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc.* v. *Sullivan,* 372 U. S. 58, 70 (1963). The presumption is by no means rebutted here. For one, the unprecedented injunction entered by the courts below, which bars petitioner John Lawrence from uttering in the workplace any of a judicially drawn list of words deemed offensive to Latino employees, very likely suppresses fully protected speech. But even if some types of harassing speech in the workplace do not enjoy First Amendment protection, there has been no showing that a prior restraint, rather than the less severe remedy of money damages for any future violations, is necessary to regulate Lawrence's speech. Further, the injunction here is not narrowly tailored, as it applies even to isolated remarks and to remarks outside the hearing of respondents or any Latino employee. For these reasons, I respectfully dissent from the Court's denial of certiorari.

I

Respondents, who are Latinos, were employed as drivers at petitioner Avis Rent A Car System, Inc.'s San Francisco airport facility. According to the complaint, Lawrence, another employee of the facility, routinely harassed only the Latino drivers, calling them derogatory names and demeaning them on the basis of their race, national origin, and lack of English language skills. Lawrence also appears to have engaged in uninvited touching of the Latino drivers. Respondents filed suit against Lawrence and Avis in California court under that State's Fair Employment and Housing Act (FEHA), which makes it unlawful "[f]or an employer . . . or any other person, because of race . . . [or] national origin . . . to harass an employee or applicant." Cal. Govt. Code Ann. § 12940(h) (West 1992). A jury returned special verdicts in favor of respondents, finding that Lawrence had engaged in harassment and that Avis knew or should have known of Lawrence's conduct. Respondents were each awarded $25,000 in damages, except for one who was found by the jury not to have suffered emotional distress.

The trial court then considered respondents' request for injunctive relief. Over the objection of petitioners that there was no evidence of ongoing harm such as would justify an injunction (Lawrence had not harassed anyone at work for two years), the trial court granted the requested injunction. Specifically, it ordered:

"1. Defendant John Lawrence shall cease and desist from using any derogatory racial or ethnic epithets directed at, or descriptive of, Hispanic/Latino employees of Avis Rent A Car System, Inc., and shall further refrain from any uninvited intentional touching of said Hispanic/Latino employees, as long as he is employed by Avis Rent A Car System, Inc. in California.

"2. Defendant Avis Rent A Car System, Inc. shall cease and desist from allowing defendant John Lawrence to commit any of the acts described in paragraph 1 above, under circumstances in which it knew or should have known of such acts . . . ." App. to Pet. for Cert. C2.

Lawrence and Avis appealed from the injunction portion of the judgment, claiming it is impermissibly overbroad and vague. The Court of Appeal agreed to an extent, holding that the injunction

must be restricted to Lawrence's speech *in the workplace* and articulated in the form of an exemplary list of forbidden words, but upheld the injunction in all other respects.

A divided California Supreme Court affirmed. 21 Cal. 4th 121 (1999). The plurality opinion, at the outset, declined to entertain petitioners' contention that the First Amendment prohibits application of employment discrimination laws to the sort of harassing speech that creates a "hostile environment," deeming the argument waived by petitioners' decision not to challenge the jury findings of liability and damages for their past conduct. *Id.*, at 131, n. 3, 136–137, n. 5. The plurality then turned to the propriety of the injunctive remedy, accepting at face value the trial court's finding of a " 'substantial likelihood' " that Lawrence would harass again unless restrained. *Id.*, at 132. The plurality rejected petitioners' First Amendment objection, holding that the injunction is not an invalid prior restraint "because the order was issued only after the jury determined that defendants had engaged in employment discrimination, and the order simply precluded defendants from continuing their unlawful activity." *Id.*, at 138. A concurring opinion addressed the threshold question deemed waived by the plurality, concluding that, while FEHA's restrictions are content based when applied to pure speech, the First Amendment does not prohibit such application of FEHA. *Id.*, at 164, 166 (opinion of Werdegar, J.). Justices Mosk, Kennard, and Brown each filed dissenting opinions. See *id.*, at 169 (opinion of Mosk, J.); *id.*, at 176 (opinion of Kennard, J.); *id.*, at 189 (opinion of Brown, J.).

## II

I would grant certiorari to address the troubling First Amendment issues raised by this injunction. Attaching liability to the utterance of words in the workplace is likely invalid for the simple reason that this speech is fully protected speech.[1] No one claims

---

[1] Like the concurring and dissenting justices below, I do not consider this argument waived by virtue of petitioners' decision not to appeal the money damages portion of the judgment. A First Amendment objection is, as a matter of logic, available against the money damages portion, the injunction portion, or both. Petitioners may well have thought their First Amendment claim weaker with respect to the money damages portion because Lawrence's past conduct consisted of speech *and* conduct (whereas the injunction prohibits pure speech independent of any conduct), cf. *NLRB* v. *Virginia Elec. & Power Co.*, 314 U. S. 469, 478 (1941), and because prior restraints

that the words on the "exemplary list" (to be drafted by the trial court on remand) qualify as fighting words, see *Chaplinsky* v. *New Hampshire*, 315 U. S. 568, 572 (1942), obscenity, see *Miller* v. *California*, 413 U. S. 15, 24 (1973), or some other category of speech currently recognized as outside the scope of First Amendment protection. Even if these words do constitute so-called "low-value speech," the content-based nature of FEHA's restriction—which bars speech based upon "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation," Cal. Govt. Code Ann. § 12940(h)(1) (West Supp. 2000) but not because of political affiliation, union membership, or numerous other traits—renders it invalid under our current jurisprudence. *R. A. V.* v. *St. Paul*, 505 U. S. 377, 391 (1992).

To uphold the application of a content-based antidiscrimination law such as FEHA to pure speech in the workplace, then, we would have to substantially modify our First Amendment jurisprudence. This is not to say that there are no doctrinal bases for such a modification. As the concurring opinion below pointed out, for example, we have held that public employers retain some leeway to regulate their employees' speech in the workplace, see 21 Cal. 4th, at 156 (Werdegar, J., concurring) (citing *Connick* v. *Myers*, 461 U. S. 138 (1983)), and have occasionally stated that speech may be more readily restricted when the audience is "captive" and cannot avoid the objectionable speech, see 21 Cal. 4th, at 159 (Werdegar, J., concurring) (citing *Frisby* v. *Schultz*, 487 U. S. 474 (1988)). On the other hand, these analogies may not quite translate to the instant problem. See, *e. g.*, 21 Cal. 4th, at 184–185 (Kennard, J., dissenting) (discussing captive audience doctrine); Volokh, Freedom of Speech and Workplace Harassment, 39 UCLA L. Rev. 1791, 1821 (1992) (arguing that this Court's cases on speech in the workplace do not support a "workplace speech exception" broad enough to justify harassment law). In light of the difficulty of these issues, it is not surprising that even those commentators who conclude the First Amendment generally permits application of harassment laws to workplace speech recognize exceptions where First Amendment interests are especially strong. See, *e. g.*, Fallon, Sexual Harassment, Content Neutrality,

---

are especially suspect under the First Amendment, see, *e. g.*, *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U. S. 546, 558–559 (1975).

and the First Amendment Dog that Didn't Bark, 1994 S. Ct. Rev. 1, 41, 47 (exception for speech that is reasonably designed or intended to contribute to reasoned debate on issues of public concern).

But even assuming that some pure speech in the workplace may be proscribed consistent with the First Amendment when it violates a workplace harassment law, special First Amendment problems are presented when, as here, the proscription takes the form of a prior restraint. We have, since *Near* v. *Minnesota ex rel. Olson*, 283 U. S. 697 (1931), evaluated injunctions against speech as prior restraints, which entails the strictest scrutiny known to our First Amendment jurisprudence. As we have explained:

> "The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U. S. 546, 558–559 (1975).

The instant injunction is insufficiently tailored in at least three respects, raising serious doubts concerning whether "the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Madsen* v. *Women's Health Center, Inc.*, 512 U. S. 753, 765 (1994).[2]

*First,* the injunction prohibits even a single utterance of a prohibited word. Yet a hostile environment for purposes of FEHA only arises "[w]hen the workplace is permeated with discrimina-

---

[2] Although a content-neutral injunction is not treated as a prior restraint, see *Schenck* v. *Pro-Choice Network of Western N. Y.*, 519 U. S. 357, 372 (1997); *Madsen*, 512 U. S., at 763–764, n. 2, the instant injunction is indisputably content based. See 21 Cal. 4th 121, 164 (1999) (Werdegar, J., concurring); *id.*, at 172 (Mosk, J., dissenting). I apply the *Madsen* standard here because, if the injunction fails the *Madsen* standard for content-neutral injunctions, *a fortiori* it fails whatever standard applies to content-based injunctions.

tory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris* v. *Forklift Systems, Inc.*, 510 U. S. 17, 21 (1993) (internal quotation marks and citation omitted); see 21 Cal. 4th, at 130 (plurality opinion) ("California courts have adopted the *[Harris]* standard in evaluating claims under the FEHA"). It simply cannot be known in advance whether a particular utterance will create (or recreate) a hostile environment under this standard, and speculation simply does not suffice to rebut the heavy presumption against a prior restraint. See *Southeastern Promotions, supra,* at 561; *New York Times Co.* v. *United States*, 403 U. S. 713, 725–726 (1971) (Brennan, J., concurring) ("[T]he First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result"). The alternative remedy of a money damages judgment for future violations would solve the problem. *Second,* there has been no showing that the prospect of a money damages judgment for future violations would fall short of deterring petitioners from recreating a hostile environment, especially when a second money damages judgment might include hefty punitive damages and attorney's fees. See 21 Cal. 4th, at 194 (Brown, J., dissenting). Indeed, it appears from the transcript of the injunction hearing held in 1994 that Lawrence had not engaged in any harassing speech or conduct since 1992. See App. to Brief in Opposition A9. *Third,* the prohibition applies without regard to whether the utterance is directed at, or within earshot of, respondents (or, for that matter, any Latino employee), and contains no exception for speech that might contribute to reasoned debate.

My colleagues are perhaps dissuaded from granting certiorari by the paucity of lower court decisions addressing the First Amendment implications of workplace harassment law, and by the incomplete factual record in this case. Neither is a persuasive reason to deny certiorari. *First,* we must remember that we deal here with a claim at the core of the First Amendment—that the State is suppressing speech that it dislikes. For the same reason that we evaluate prior restraints under a heavy presumption against their validity (the harm from delay), we should decide the issue now. And the thorough treatment of the issues by the several opinions below makes it especially unnecessary to await a split in the lower courts. *Second,* while it is true that the

record does not reveal the past speech and conduct upon which the jury based its money damages award and the trial court based its grant of injunctive relief, the record does plainly indicate the scope of the injunction and the conclusory nature of the trial court's findings as to the need for an injunction. Though the record may disable us from resolving here and now every detail of the interaction between the First Amendment and workplace harassment law, an incremental approach to this area would seem wise in any event. I respectfully dissent.