Justice Breyer,
concurring.
I agree with the Court and join its opinion. That opinion restricts its analysis here to the matter raised in the petition for certiorari, namely, Westboro’s picketing activity. The opinion does not examine in depth the effect of television broadcasting. Nor does it say anything about Internet postings. The Court holds that the First Amendment protects the picketing that occurred here, primarily because the picketing addressed matters of “public concern.”
While I agree with the Court's conclusion that the picketing addressed matters of public concern, I do not believe that our First Amendment analysis can stop at that point. A State can sometimes regulate picketing, even picketing on matters of public concern. See Frisby v. Schultz, 487 U. S. 474 (1988). Moreover, suppose that A were physically to assault B, knowing that the assault (being newsworthy) would provide A with an opportunity to transmit to the public his views on a matter of public concern. The constitutionally protected nature of the end would not shield A's use of unlawful, unprotected means. And in some circumstances the use of certain words as means would be similarly unprotected. See Chaplinsky v. New Hampshire, 315 U. S. 568 (1942) (“fighting words”).
The dissent recognizes that the means used here consist of speech. But it points out that the speech, like an assault, seriously harmed a private individual. Indeed, the state *462 tort of “intentional infliction of emotional distress” forbids only conduct that produces distress “so severe that no reasonable man could be expected to endure it,” and which itself is “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Post, at 464 (opinion of Alito, J.) (quoting Harris v. Jones, 281 Md. 560, 567, 571, 380 A. 2d 611, 614, 616 (1977); internal quotation marks omitted). The dissent requires us to ask whether our holding unreasonably limits liability for intentional infliction of emotional distress — to the point where A (in order to draw attention to his views on a public matter) might launch a verbal assault upon B, a private person, publicly revealing the most intimate details of B’s private life, while knowing that the revelation will cause B severe emotional harm. Does our decision leave the State powerless to protect the individual against invasions of, e. g., personal privacy, even in the most horrendous of sueh circumstances?
As I understand the Court’s opinion, it does not hold or imply that the State is always powerless to provide private individuals with necessary protection. Rather, the Court has reviewed the underlying facts in detail, as will sometimes prove necessary where First Amendment values and state-protected (say, privacy-related) interests seriously conflict. Cf. Florida Star v. B. J. F., 491 U. S. 524, 533 (1989); Bose Corp. v. Consumers Union of United States, Inc., 466 U. S. 485, 499 (1984). That review makes clear that West-boro’s means of communicating its views consisted of picketing in a place where picketing was lawful and in compliance with all police directions. The picketing could not be seen or heard from the funeral ceremony itself. And Snyder testified that he saw no more than the tops of the picketers’ signs as he drove to the funeral. To uphold the application of state law in these circumstances would punish Westboro for seeking to communicate its views on matters of public *463 concern without proportionately advancing the State’s interest in protecting its citizens against severe emotional harm. Consequently, the First Amendment protects Westboro. As I read the Court’s opinion, it holds no more.