# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KM-01598-COA

**KIM COLLINS A/K/A KIM ROCHELLE COLLINS A/K/A KIM R. COLLINS**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2015 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER III |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRIAN LEE STARLING |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | TRENT KELLY |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | CONVICTED OF DISORDERLY CONDUCT, RESISTING ARREST, AND DISTURBING THE PEACE, AND SENTENCED TO NINETY DAYS IN THE MONROE COUNTY JAIL ON EACH CHARGE, WITH THE JAIL TERMS SUSPENDED, AND TO PAY FINES OF $200 ON EACH CHARGE; AND CONVICTED OF SPEEDING AND PUBLIC PROFANITY AND SENTENCED TO PAY FINES OF $100 AND $200 |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART – 06/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Kim Collins appeals five separate judgments of the Monroe County Circuit Court adjudicating her guilty of five misdemeanor offenses: resisting arrest, disorderly conduct, speeding, public profanity, and disturbing the peace. She submits that the circuit court erred

in not dismissing the charges against her because of the absence of probable cause to arrest her. As to the speeding charge, we disagree, but as to the other charges, we agree. Therefore, we affirm the judgment of the circuit court of conviction and sentence for speeding and reverse and render each of the judgments of the circuit court of conviction and sentences for resisting arrest, disorderly conduct, public profanity, and disturbing the peace.

FACTS

¶2. On January 21, 2013, Collins was stopped for speeding by Mississippi State Highway Patrol Trooper Matthew Hood in Monroe County, Mississippi. According to the testimony at trial, throughout the traffic stop, Trooper Hood and Collins exchanged comments about the stop, and Collins expressed her disagreement with being stopped. At what appeared to be the conclusion of the stop, Trooper Hood issued Collins a citation for speeding and having no insurance, informed her of her court date, and told her "to slow down and be careful." He then turned and began walking to his patrol car. Trooper Hood stated that as he reached the front-bumper area of his patrol car, Collins called him a "racist motherf----r." However, Collins disputes this allegation and asserts that she only expressed her intent to contact Trooper Hood's superior officer.[1]

¶3. After the alleged remark by Collins while she was driving off, Trooper Hood yelled

---

[1] Trooper Hood admits that Collins said to him that she was going to call his superior officer, but neither that statement nor the disputed statement can be heard on the audio of Trooper Hood's dash-cam video. In fact, none of the statements that Collins made while inside of her car can be heard on the dash-cam recording.

to her that "you had better go head." With almost no hesitation after he told her that she "had better go head," he began approaching the vehicle again and yelled out to Collins to stop her vehicle and to put it in park. Collins complied. Upon reaching the vehicle, he instructed her to step out of her vehicle, without informing her as to why she was being ordered out. Upon her refusal, Trooper Hood opened her door, removed her seatbelt, and physically pulled her from her vehicle. He then attempted to place handcuffs on her by forcefully restraining her against her vehicle, but she resisted; he eventually handcuffed her after forcing her to the ground. After being handcuffed, Collins lay near the roadway until the arrival of a backup trooper. Eventually, an ambulance arrived and transported Collins to the hospital for treatment of what she was describing as a broken leg.[2] According to Trooper Hood's testimony, he charged Collins with (1) disturbing the peace for calling him a "racist motherf----r," (2) disorderly conduct for Collins's failure to comply with his command to get out of her car, (3) public profanity for cussing in the presence of Trooper Tucker,[3] the EMTs, and "other motorists," (4) resisting arrest for refusing to allow him to handcuff her, and (5) speeding for driving eighty miles per hour in a sixty-five-mile-per-hour zone. Collins was found guilty in the Justice Court of Monroe County of all counts before appealing to the Circuit Court of Monroe County, which also found her guilty on all counts. In her appeal here, she argues that the circuit court erred in not dismissing the charges.

---

[2] Collins did not suffer a broken leg, as, according to her trial testimony, she suffered a torn ACL, a torn meniscus, and "a lot of just torn ligaments in her knee."

[3] The record does not inform us of Trooper Tucker's first name.

DISCUSSION

¶4.      Collins first argues that the trial court erred in denying her motion to dismiss because Trooper Hood illegally detained her after the initial stop was over.  She concedes that the original stop for speeding was lawful, but according to her, "[o]nce Trooper Hood issued the citation, his actions and statements indicated that [she] was free to leave[,]. . . thus ending the traffic stop and the probable cause associated with it."  More specifically, she argues that because Trooper Hood had no valid basis to stop her a second time—and she had the right to resist an illegal arrest—all charges emanating from the second detention should have been dismissed.

¶5.      The State responds that whether or not the initial detention was over is of little importance.  According to the State, Trooper Hood had probable cause to detain Collins a second time based on her subsequent actions, which constituted disturbing the peace.  The State contends that, based on the recording of the traffic stop and Trooper Hood's testimony, he was "justified, upon observing what he perceived was a breach of the peace, or conduct calculated to provoke a breach of the peace, in detaining Collins a second time."

¶6.      It is clear from Trooper Hood's testimony that he arrested Collins for disturbing the peace for calling him  a "racist motherf----r."  We quote his trial testimony regarding the disturbing-the-peace charge, as well as the other charges that he made against Collins:

> Q.      You have also charged her with -- Ms. Collins with ***disturbance of the peace***; is that correct?
>
> A.      Yes, ma'am.

4

Q.  *And that was for what?*

A.  *The comment when I went back up to the car, the racist mother[f----r] comment.*

Q.  Okay. And after that comment was made on the video -- and you stated during the video, after that comment was made, that's when you told her to stop and get out of the car; is that correct?

A.  Yes, ma'am.

Q.  Now, you also charged her with disorderly conduct, failure to comply; is that correct?

A.  Yes, ma'am. Yes, ma'am.

Q.  And can you tell the Court, was that for when she wouldn't get out of the vehicle? At what point in time was that?

A.  That was for her failing to comply with my order to get out of the car.

Q.  And also by the affidavit refusing to put her hands behind her back?

A.  Yes, ma'am.

Q.  Okay. The public profanity charge, that was for which point in time?

A.  It was going to be the point in time when Trooper Tucker and myself were there, also the EMTs, along with other motorists.

Q.  And do you recall -- and it was audible, the profanity used prior to Trooper Tucker and the EMTs arriving on the scene. Do you recall what was said after they arrived on the scene and were in Ms. Collins'[s] presence?

A.  No, ma'am, I do not.

Q.  Okay. Do you recall that she used profanity?

A.  Yes, ma'am.

5

Q. You just don't recall the specific words?

A. That's correct.

Q. And then resisting arrest. Can you explain to the Court what you charged her with resisting arrest for?

A. That was for physically trying to keep me from handcuffing her. I was telling her to put her hands behind her back. She was physically trying to resist it and keep me from handcuffing her.

Q. And was that the point in time we could see her pulling away from you and waving her hands in the air?

A. Yes, ma'am.

(Emphasis added).

¶7.    It is clear to us, based on Trooper Hood's testimony, that the traffic stop had ended before Collins was arrested for disturbing the peace by allegedly calling Trooper Hood a "racist motherf----r." Trooper Hood had given Collins the speeding ticket and had walked away from her vehicle. He did not give any indication that the traffic stop had not been completed. Although he testified that his traffic stops do not end until he returns to his car and drives off, when asked if he would have stopped Collins had she simply driven away as he returned to his car, he replied that he would not have. Therefore, as stated, the initial traffic stop for speeding had been completed, as Trooper Hood had not only given Collins the speeding ticket and had walked away, he had also given her what can only be described as parting instructions: he had told her where to pay the ticket, to have a nice day, to slow down, and to be careful. And even after Collins was leaving while allegedly calling him a

6

"racist motherf----r," he even told her she had "better go head."

¶8.     Collins argues that Trooper Hood violated her First and Fourteenth Amendment rights by stopping her a second time simply for her spoken words. According to Collins, "[b]ecause Trooper Hood's basis of probable cause to arrest was founded on a violation of her First Amendment constitutional right, his probable cause determination was void and illegal."

¶9.     The State concedes that "Congress shall make no law abridging the freedom of speech." *Brendle v. City of Houston*, 759 So. 2d 1274, 1278-79 (¶16) (Miss. Ct. App. 2000). However, the State argues that "the freedom of speech is not absolute." *Id*. The State next cites an excerpt from the trial judge's decision: "I consider this to be a term that is, particularly in view of today's circumstance, fighting words or comment. Particularly, too, when they are considered in the context of which they were made." The State argues that the trial court found that Collins's speech constituted fighting words and, therefore, was not protected speech.

¶10.    Despite the State's arguments, and regardless of whether Collins had uttered fighting words, we find that the circuit court erred, and Trooper Hood's arrest of Collins for disturbing the peace was illegal, as she had not committed the offense of disturbing the peace when he ordered her out of her car for calling him a "racist motherf----r." Taking Trooper's Hood's statement as true, as we must, not only had Collins not committed the offense of disturbing the peace, she had not committed any of the other offenses that Trooper Hood later

7

charged her with.

¶11. As we said in *Odem*, "the United States Supreme Court [has] held that there are definite and narrowly limited classes of speech which may be constitutionally punished. These include the lewd and obscene, the profane, the libelous and insulting, or 'fighting' words which . . . tend to incite an immediate breach of the peace." *Odem v. State*, 881 So. 2d 940, 947 (¶23) (Miss. Ct. App. 2004) (quoting *Chaplinsky v. State of N.H.*, 315 U.S. 568 (1942)). However, "the Supreme Court has also held that profane words alone, unaccompanied by any evidence of violent arousal, are not fighting words, and are therefore protected speech." *Id*. at 948 (¶25). The court went on to state that, "[u]nfortunately, law enforcement officers must endure verbal abuse." *Id*. at (¶27). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.*

¶12. Trooper Hood testified that the probable cause to arrest Collins was based on her calling him a "racist motherf----r." He also testified that the words she used did not incite him to fight and that he did not consider them to be fighting words. Collins asserts that nothing said rose to the level required for probable cause to arrest her for disturbing the peace.

¶13. Our disturbance-of-the-peace statute, Mississippi Code Annotated section 97-35-15(1) (Rev. 2014), provides:

> Any person who disturbs ***the public peace, or the peace of others***, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous

8

conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor.

It is clear from even a casual reading of the above statute that the statute only prohibits disturbing the **public peace** of the **peace of others**.  The record is clear that when Trooper Hood ordered Collins to stop her car and get out, only she and he were there on the side of the road.  Therefore, when she said what Trooper Hood accused her of saying, she could not have disturbed the public peace, nor could she have disturbed the peace of others, and the statute does not prohibit disturbing the peace of **another**.

¶14.    The State notes that, based on Trooper Hood's testimony, and the recording of the traffic stop, Collins was argumentative and insulting throughout the stop, asserting that Trooper Hood had pulled her over because it was Martin Luther King Jr. Day and Trooper Hood wanted to "harass black people."  The State further argues that after Collins called Trooper Hood a "racist motherf----r," Trooper Hood was justified, upon observing what he perceived was a breach of the peace, or conduct calculated to provoke a breach of the peace, in detaining Collins a second time.

¶15.    It is sufficient to say, as we already have, Trooper Hood himself did not consider the insult to be fighting words.  Therefore, it cannot be legitimately argued that Collins's words to Trooper Hood were likely to cause a breach of the peace.

¶16.    We need not address the other charges, as they all stem from Collins's lawful resistence to her unlawful arrest for disturbing the peace.  Therefore, we reverse and render

9

all of the remaining charges except speeding. There was sufficient evidence to support Collins's conviction for speeding, as Trooper Hood testified that he clocked her on his radar gun traveling eighty miles per hour in a sixty-five-mile-per-hour zone. The evidence was uncontradicted that his radar detector had been properly and timely calibrated. Therefore, we affirm the judgment of the circuit court as to the speeding charge.

¶17. **THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT OF CONVICTION OF SPEEDING AND SENTENCE TO PAY A FINE OF $100 IS AFFIRMED, AND THE SEPARATE JUDGMENTS OF CONVICTION OF DISORDERLY CONDUCT, RESISTING ARREST, PUBLIC PROFANITY, AND DISTURBING THE PEACE ARE REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.**

**LEE, C.J., ISHEE, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON AND WILSON, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**